NO. 07-10-00332-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL A

JULY 18, 2011

_____

CONCEPT GENERAL CONTRACTING, INC., D/B/A
CONCEPT BUILDERS, BW AFFORDABLE HOUSING, L.P.,
AND CAPITOL INDEMNITY CORP., APPELLANTS

v.

ASBESTOS MAINTENANCE SERVICES, INC., APPELLEE

_____

FROM THE 222ND DISTRICT COURT OF DEAF SMITH COUNTY;

NO. CI-05H-106; HONORABLE ROLAND D. SAUL, JUDGE

_____

Before CAMPBELL and HANCOCK and PIRTLE, JJ.

**OPINION**

Appellants, Concept General Contracting, Inc. (Concept) and Capitol Indemnity Corp. (Capitol), appeal a judgment awarding damages to appellee, Asbestos Maintenance Services, Inc. (AMS), in an amount of $120,883.95. We affirm the judgment of the trial court.

Background

On May 27, 2004, BW Affordable Housing, L.P. (BW), contracted with Concept to renovate certain apartment units owned by BW in Hereford, Texas. Concept, as general contractor for the project, executed and filed a payment bond issued by Capitol. As part of this project, Concept and AMS entered into a subcontract for AMS to provide asbestos abatement for restricted areas within 125 apartment units. This contract specifically limited the areas to be abated in a manner that would allow AMS to utilize an abatement method that is less intrusive and less costly than a full abatement. Soon after AMS began work on the project, Concept requested some additional remediation. AMS gave Concept a quote for this additional work, performed this additional work, and Concept paid AMS for this additional work.

While AMS was performing the work identified in these two contracts, Jack Scheuerer, construction superintendent for Concept, requested AMS perform additional abatement in certain units. Concept began performing this additional work, but the additions were so numerous that they dramatically enlarged the scope of the project, and altered the means by which the abatement could be performed.[1] This extra work was billed to Concept as it was performed by AMS. For the first four invoices, Concept paid for the extra work without objection. However, somewhere around the fifth invoice, Concept stopped paying for the extra work that AMS had performed. For approximately

---

[1] According to the testimony of Glen Ashton, a third-party air maintenance consultant employed for this project, the additional work requested by Scheuerer more than doubled the scope of the work that was covered by the first two contracts, and altered the manner of performing the work by requiring area containment and the donning of hazmat suits.

eleven invoices, AMS continued to do the extra work that was marked at the job site by Scheuerer, but AMS eventually ceased doing this work when it determined that Concept was not going to pay for this extra work. However, AMS continued to perform the work delineated in the two contracts for some time. At some point in the project, AMS ceased working and left the work site but stood ready to complete the contract work if and when recalled to the site by Concept. However, Concept did not call AMS back to the work site. Rather, Concept contracted with another asbestos abatement company to complete the work under the contracts as well as additional work that needed to be done.

On the basis of the unpaid extra work, AMS brought suit against Concept and Capitol (collectively "appellants"). After a two-day trial, the trial court took the case under advisement. Nearly three years later, the trial court entered its judgment awarding AMS $120,883.95 in damages, post-judgment interest, and $25,000 in attorney's fees. Concept and Capitol then filed a motion for new trial, which was denied after hearing. Concept and Capitol also filed a request for findings of fact and conclusions of law. The trial court entered findings of fact and conclusions of law.

Appellants present fifteen issues by this appeal. By their first two issues, appellants contend that the trial court erred in awarding AMS recovery for *quantum meruit* because this was an undisclosed theory of recovery. By their third and fourth issues, appellants contend that the trial court abused its discretion in admitting documentary exhibits and photographs as business records. By their fifth issue, appellants contend that the trial court erred in finding appellants liable under a theory of

3

*quantum meruit* when AMS dismissed the proper party, the owner of the benefited property. By their sixth, seventh, eighth, and tenth issues, appellants contend that the evidence was factually insufficient to support the trial court's judgment. By their ninth issue, appellants contend that liability under the theory of *quantum meruit* was error because of the existence of express contracts covering the work performed. By their eleventh and fifteenth issues, appellants contend that the trial court erred by failing to comply with the requirements of Texas Government Code section 74.059(c)(2). By their twelfth issue, appellants appear to contend that the evidence established their affirmative defenses of waiver or estoppel as a matter of law. By their thirteenth and fourteenth issues, appellants contend that they established their counterclaim as a matter of law and should, therefore, have been awarded these damages and attorney's fees. We will overrule each of these issues, and affirm the judgment of the trial court.

Issues 1 & 2: Failure to Disclose Theories of Recovery

By their first two issues, appellants contend that the trial court abused its discretion in admitting evidence to support AMS's *quantum meruit* and payment bond theories of recovery because AMS failed to expressly disclose these theories in response to a request for disclosure. Appellants contend that, under Texas Rule of Civil Procedure 193.6(a), AMS's failure to specifically identify these theories of recovery in its disclosure prevents AMS from introducing evidence to support these theories. AMS responds that each of its three petitions, including its live pleading, included claims for *quantum meruit* damages and recovery from the payment bond, and that pleading these theories of recovery is sufficient.

The appellants' contention is premised entirely on AMS's failure to specifically disclose the theories of recovery under *quantum meruit* and the payment bond in response to appellants' request for disclosure of "[t]he legal theories and, in general, the factual bases of your claims or defenses." AMS responded to this request by disclosing that,

> Plaintiff contracted with Concept General Contracting, Inc. to perform asbestos abatement services, and performed all services requested until it became apparent that Concept was refusing to pay for same, at which time work was suspended pending resolution of outstanding receivables. Thereafter, Concept requested that plaintiff remove its remaining materials from the job.

Appellants contend that AMS's failure to explicitly disclose that it was seeking recovery under the theory of *quantum meruit* and the payment bond provided by Capitol triggers the exclusionary provision of Texas Rule of Civil Procedure 193.6 to prevent AMS from offering any evidence to support these theories of recovery. See TEX. R. CIV. P. 193.6(a).

This Court finds it extremely significant that the record reflects that both theories of recovery were always pled by AMS as theories upon which it sought recovery from appellants. Notice that a plaintiff is pursuing a particular theory of recovery generally must come from the pleadings. See Cunningham v. Parkdale Bank, 660 S.W.2d 810, 812 (Tex. 1983) (pleadings define the issues at trial and give opposing party sufficient information to enable him to prepare a defense). Appellants do not contest that each of these theories of recovery were properly pled by AMS nor did they file any special exceptions to AMS's pleadings. Thus, appellants were afforded appropriate notice that

5

AMS intended to pursue theories of recovery in *quantum meruit* and under the payment bond.

Further, while failures to comply with requests for disclosure result in automatic exclusion of the non-disclosed evidence, absent proof of good cause or lack of unfair surprise or unfair prejudice, see TEX. R. CIV. P. 193.6(a); Phan v. Addison Spectrum, L.P., 244 S.W.3d 892, 899 (Tex.App.—Dallas 2008, no pet.), properly pled claims for affirmative relief, as opposed to withheld evidence, are not abandoned or waived by a party's failure to expressly identify those claims in a response to a request for disclosure.[2] See Killam Ranch Props., Ltd. v. Webb County, No. 04-08-00105-CV, 2008 Tex.App. LEXIS 8682, at *3-*5 (Tex.App.—San Antonio Nov. 19, 2008, no pet.) (mem. op.) (holding failure to respond to discovery request not an abandonment of properly pled claim for attorney's fees).

Because the live pleadings of AMS provide notice of its intent to pursue recovery under the theories of both *quantum meruit* and the payment bond and because its failure to expressly identify those theories in its responses to discovery requests are not an abandonment of those claims, we overrule appellants' first two issues.

---

[2] In fact, this distinction between the failure to disclose evidence in response to a discovery request as opposed to the failure to disclose properly pled theories of recovery is precisely why the trial court's ruling excluding the testimony of appellants' untimely disclosed expert was proper. The withholding of evidence that is necessary to respond to a discovery request properly results in the exclusion of that evidence under Rule 193.6(a).

Issues 3 & 4: Business Records

By their third and fourth issues, appellants contend that the trial court abused its discretion by admitting certain documents and photographs as unauthenticated business records. The documents constitute AMS's Exhibits Five through Nineteen and appear to be records relating to the work that AMS's employees performed on the BW project. The photographs, AMS's Exhibit Twenty, portray various stages of work performed in unidentified apartment units. Appellants contend that the challenged evidence was not properly authenticated and constitutes hearsay for which AMS has failed to establish any applicable exception to the hearsay rule. AMS responds that the testimony of Jack Coiner, an owner of AMS, established each of the requisites to qualify the challenged evidence as business records, which are excepted from the hearsay rule. See TEX. R. EVID. 803(6).

Evidentiary rulings are committed to the sound discretion of the trial court. Bay Area Healthcare Group, Ltd. v. McShane, 239 S.W.3d 231, 234 (Tex. 2007). A trial court abuses its discretion when it acts without reference to any guiding rules and principles. Downer v. Aquamarine Operators, Inc., 701 S.W.2d 238, 241-42 (Tex. 1985). However, even if a trial court abuses its discretion by improperly admitting evidence, reversal is warranted only if the error probably caused the rendition of an improper judgment. See TEX. R. APP. P. 44.1; Bay Area Healthcare, 239 S.W.3d at 234. In such an instance, an appellate court reviews the entire record and requires the complaining party to demonstrate that the judgment turns on the particular evidence admitted. Bay Area Healthcare, 239 S.W.3d at 234.

Evidence is authenticated by proof that the challenged evidence is what its proponent claims it to be.  See TEX. R. EVID. 901(a).[3]  Hearsay is defined as a statement, other than one made by the declarant while testifying at trial or hearing, offered in evidence to prove the truth of the matter asserted.  Rule 801(d).  Generally, hearsay is not admissible in evidence.  Rule 802.  However, there are a number of exceptions to this general rule, including the "business records" exception found in Rule 803(6).  For evidence to be admissible as a business record, the record must have been made at or near the time that the recorded event occurred by a person with knowledge of the event if the record was kept in the course of a regularly conducted business activity as shown by the testimony of a custodian of the record or other qualified witness.  See Rule 803(6).

In the present case, appellants objected to the challenged evidence as not having been properly authenticated by a person with personal knowledge of the contents of the evidence and as violating the hearsay rule.  AMS presented testimony from Coiner that the evidence was made at or near the time that the work was performed by a person with knowledge of the work performed and that these records were kept in the ordinary course of business.  Further, Coiner testified that he was the custodian of the challenged records.

Coiner, during *voir dire*, identified each document in Plaintiff's Exhibit Five, which appellants treated as representative of Exhibits Five through Nineteen, as well as identifying what the photographs contained in Exhibit Twenty portrayed.  Coiner's

---

[3] Further reference to the Texas Rules of Evidence will be by "Rule ___."

8

testimony that the evidence accurately portrays what AMS claims it portrays, which is the records and photographs from the BW project that were compiled during work on the project, is sufficient evidence to satisfy the authentication requirement of Rule 901(a), regardless of whether Coiner had personal knowledge of the contents of this evidence. See Kirwan v. City of Waco, 249 S.W.3d 544, 549 (Tex.App.—Waco 2008), rev'd on other grounds, 298 S.W.3d 618 (Tex. 2009). Thus, we find the challenged evidence to have been properly authenticated and that the trial court did not abuse its discretion in admitting the evidence over appellants' authentication objection.

In regard to appellants' challenge to whether AMS established the business records exception to the hearsay rule, Coiner testified to each of the requisites to establish the evidence as business records under Rule 803(6). However, appellants again contend that Coiner did not have personal knowledge of the information contained in the records. But, for a witness to establish the business record exception, he need not have been the record's creator or have any personal knowledge of the contents of the record; rather, the witness need only have personal knowledge of the manner in which the records were prepared. Brooks v. State, 901 S.W.2d 742, 746 (Tex.App.—Fort Worth 1995, pet. ref'd). We conclude that Coiner's testimony established the requisites for application of the business records exception, and, therefore, that the trial court did not abuse its discretion in admitting the evidence over appellants' hearsay objection.

Because the trial court did not abuse its discretion in admitting AMS's Exhibits Five through Twenty over appellants' authentication and hearsay objections, we overrule appellants' third and fourth issues.

## Issue 5: Proper Party

By their fifth issue, appellants contend that the trial court erred in awarding damages to AMS against Concept and Capitol because neither appellant owned the apartment units and, therefore, could not be liable for *quantum meruit* damages. AMS responds contending that Concept is the proper party against whom *quantum meruit* damages should be assessed because it was Concept, rather than the owner of the apartment complex, that requested the extra work.

In its original petition, AMS named the owner of the apartment units, BW, as a defendant. However, in its subsequent amended petitions, AMS dropped BW as a defendant. On this basis, appellants cite Truly v. Austin, 744 S.W.2d 934, 937 (Tex. 1988), for the proposition that "[c]entral to the contractor's right to recover in *quantum meruit* is the owner's acceptance and retention of the benefits arising as a direct result of the contractor's partial performance." Interpreting this quoted portion of Truly as literally as possible, appellants contend that it is only the owner of the benefitted property that can be held liable under the theory of *quantum meruit*. However, the Truly court makes clear that, to recover in *quantum meruit*, the plaintiff must show that its efforts were undertaken for the person sought to be charged. Id. Incidental benefits to other parties do not give rise to *quantum meruit* claims against those third-party beneficiaries. See id.; Bashara v. Baptist Mem'l Hosp. Sys., 685 S.W.2d 307, 310 (Tex.

10

1985); see also Sourignavong v. Methodist Healthcare Sys., 977 S.W.2d 382, 385 (Tex.App.—Amarillo 1998, pet. denied).

In the present case, the evidence is clear that AMS contracted with Concept, as general contractor, to provide specific asbestos abatement services. The evidence does not establish that AMS ever dealt with BW directly. Further, all of the extra work that was requested was at the direction of Scheuerer, Concept's construction superintendent for the project. Thus, it was Concept, rather than BW, for whom AMS performed the extra work. See Bearden Investigative Agency, Inc. v. Melvin, No. 2-02-078-CV, 2003 Tex.App. LEXIS 957, at *17-*18 (Tex.App.—Fort Worth Jan. 30, 2003, no pet.); Fidelity Savs. & Loan Ass'n v. Morrison & Miller, Inc., 764 S.W.2d 385, 387-88 (Tex.App.—Beaumont 1989, no writ). Further, evidence was presented that Concept needed AMS's asbestos abatement, including the extra work, in order for Concept to complete its general contract with BW. Therefore, the record establishes that the extra work performed by AMS was for the benefit of Concept, and was not an incidental benefit to a third-party.

As such, we conclude that AMS could properly assert a claim of *quantum meruit* against Concept, and overrule appellants' fifth issue.

Issues 6, 7, 8, & 10: Factual Sufficiency of the Evidence

By appellants' sixth, seventh, and eighth issues, appellants contend that the evidence is factually insufficient to support the *quantum meruit* elements that AMS provided appellants valuable services or materials (issue six), AMS's work benefited appellants (issue seven), and Concept accepted services or materials from AMS (issue

11

eight). By their tenth issue, appellants contend that the evidence is factually insufficient to support the trial court's judgment against Capitol under the payment bond. Each of these issues challenge explicit factual findings made by the trial court.[4]

Standard of Review

An assertion that the evidence is factually insufficient to support a fact finding means that the evidence supporting the finding is so weak or the evidence to the contrary is so overwhelming that the answer should be set aside and a new trial ordered. Garza v. Alviar, 395 S.W.2d 821, 823 (Tex. 1965). In reviewing factual sufficiency, the reviewing court must consider, examine, and weigh all of the evidence in the record. Maritime Overseas Corp. v. Ellis, 971 S.W.2d 402, 406-07 (Tex. 1998). In doing so, the court does not consider the evidence in the light most favorable to the

---

[4] Appellants' issues challenge the trial court's following findings of fact:

5. Concept then requested substantial additional work, approximately equal in scope to the original job. This additional work substantially increased the preparation necessary, thereby actually exceeding the quoted scope.

6. Plaintiff [AMS] is an asbestos contractor, and the services provided involve removal of asbestos contaminated material. The limited scope quoted could be accomplished with the use of "glove bags" that do not involve area containment and donning of hazmat suits. The extra work subsequently requested include removal of carpet, which did require these additional precautions.

8. Plaintiff's work benefitted Defendant Concept . . . .

9. Concept accepted the extra work.

12. Asbestos [AMS] dealt directly with Concept, and presented its invoices stating the basis of its claim for compensation. All notice requirements for recovery under the payment bond against Defendant Capitol . . . have occurred or been satisfied.

finding; instead, the court considers and weighs all the evidence, and sets aside the disputed finding only if it is so contrary to the great weight and preponderance of the evidence as to be clearly wrong and unjust.  Id. at 407; Gooch v. American Sling Co., 902 S.W.2d 181, 184 (Tex.App.--Fort Worth 1995, no writ).

### *Quantum Meruit* Claim

*Quantum meruit* is an equitable theory of recovery which is based on an implied agreement to pay for benefits received.  Heldenfels Bros., Inc. v. City of Corpus Christi, 832 S.W.2d 39, 41 (Tex. 1992); Iron Mountain Bison Ranch, Inc. v. Easley Trailer Mfg., Inc., 42 S.W.3d 149, 159 (Tex.App.—Amarillo 2000, no pet.).  To establish a claim for *quantum meruit* damages in Texas, a plaintiff must prove that it (1) provided valuable services or materials, (2) for the benefit of the defendant, (3) that were accepted by the defendant, and (4) the defendant had reasonable notice that the plaintiff expected compensation for the services or materials.  Heldenfels Bros., Inc., 832 S.W.2d at 41; Iron Mountain Bison Ranch, 42 S.W.3d at 159-60.  Thus, by their sixth through eighth issues, appellants challenge the factual sufficiency of the evidence supporting the trial court's findings of fact that AMS proved the first three elements of its *quantum meruit* claim.

Appellants challenge the sufficiency of the evidence proving that the extra work performed by AMS was a valuable service or material.  Appellants' contention reiterates their complaints about the evidence addressed in issues three and four, and also contends that AMS failed to follow appropriate procedures for obtaining approval to perform the extra work.  However, a review of appellants' argument makes clear that

13

they are not disputing that AMS performed valuable work that was outside the scope of the contract.[5] Rather, appellants' contention relates to whether AMS is entitled to payment for the extra work that was performed, and the appropriate amount of value provided by AMS through its extra work. The record establishes that Scheurer requested that AMS perform extra work that exceeded the scope of the work that AMS and Concept initially agreed upon. Further, while there was some dispute regarding exactly how much extra work was performed and the value of this extra work, there is no evidence that denies that AMS performed some work that exceeded the scope of the initial agreements and that this extra work was valuable. Thus, we cannot agree with appellants' contention that the evidence was factually insufficient to establish that AMS provided valuable services or materials to Concept. We overrule appellants' sixth issue.

Appellants also challenge the factual sufficiency of the second element of AMS's *quantum meruit* claim, that Concept benefited from AMS's extra work. By this issue, appellants simply reiterate their contention presented in issue five, that any benefit from AMS's extra work flowed to the owner of the property, BW, and not to appellants. However, as addressed above in analysis of appellants' fifth issue, the evidence that Concept requested and benefitted from the extra work performed by AMS is not so against the great weight and preponderance of the evidence as to be clearly wrong and unjust. We overrule appellants' seventh issue.

---

[5] Within their argument of issue six, appellants allege that, "Finding of Fact No. 4 includes a reference to 'ALC,' a flaw which is fatal to the elements of the theory of *quantum meruit*." However, this allegation is not explained. As this Court cannot determine the nature of appellants' argument, we cannot agree that the trial court's reference to ALC is fatal to AMS's *quantum meruit* claim. We do, however, note that the trial court's finding of fact No. 4 appears to go with Finding of Fact Nos. 2 and 3 to identify the scope of the work covered by the express contracts.

Finally, appellants challenge the sufficiency of the evidence to establish that Concept accepted the extra work performed by AMS. Appellants contend that the evidence establishes that, after August 18, 2004, Concept consistently refused to accept the extra work provided by AMS by limiting payment of invoices to only those charges attributable to work performed under the initial agreement. Concept contends that it requested "backup" documentation to support the extra work, and that it conveyed to AMS that this backup was required before Concept could accept the extra work. While the record does evidence that Concept stopped paying for extra work after August of 2004 and that it requested backup documentation to support AMS's extra work, the evidence also shows that Scheurer continued to request AMS to perform extra work after August of 2004 and that the extra work performed by AMS was necessary for Concept to complete its contract with BW. Thus, while there is some evidence that appellants did not accept AMS's work after August 18, 2004, we cannot conclude that the trial court's finding that Concept accepted the extra work performed by AMS after August of 2004 is so against the great weight and preponderance of the evidence as to be clearly wrong and manifestly unjust. We overrule appellants' eighth issue.

Payment bond

By their tenth issue, appellants contend that the evidence is factually insufficient to support the trial court's judgment against Capitol. Even though the trial court found that all notice requirements under the payment bond had been satisfied by AMS, appellants point to the testimony of Mark Gross, Concept's president and owner, that AMS failed to provide the requisite notice to assert a claim against the payment bond.

15

AMS responds contending that the terms of the bond except a party in direct contract with Concept from being required to provide notice of suit. Thus, according to AMS, there was no notice requirement applicable to AMS, who was in direct contract with Concept, and the trial court's finding that all notice requirements have been satisfied is sufficient as a matter of law.

Reviewing the arguments of appellants in their tenth issue, it is clear that their factual sufficiency challenge rests on an unstated premise, that the payment bond in issue has a notice requirement that applies to AMS. A review of the record reveals that the evidence does establish that AMS did not provide Concept notice of its intent to sue. The terms of the payment bond provide that, "No suit or action shall be commenced hereunder by any claimant: . . . unless claimant, other than one having direct contract with the Principal, shall have given written notice to [Concept] . . . ." This payment bond is defined by the scope of the work that Concept was to perform in completion of the project for BW. As previously mentioned, while the extra work performed by AMS is beyond the terms of the initial agreement between AMS and Concept, the evidence establishes that AMS's extra work needed to be performed for Concept to complete the project. Thus, the extra work was within the general scope of the payment bond. Also, the evidence establishes that Concept and AMS were in direct contract with regard to the initial asbestos abatement that Concept consistently acknowledged and accepted. As such, by the express terms of the payment bond, AMS was excepted from the notice

requirement[6] and, therefore, the trial court's finding that all required notice has been satisfied is supported by the evidence. We overrule appellant's tenth issue.

## Issue 9: Express Contract

Appellants contend that the trial court erred in awarding AMS damages under the theory of *quantum meruit* because there are express contracts between AMS and Concept that generally cover AMS's provision of asbestos abatement services for the BW project. AMS responds that the express contracts did not cover the extra work requested by Concept and performed by AMS and, therefore, recovery under the theory of *quantum meruit* is permitted.

The right to recover in *quantum meruit* is based upon a promise implied by law to pay for beneficial services rendered and knowingly accepted. Davidson v. Clearman, 391 S.W.2d 48, 50 (Tex. 1965). However, when a valid express contract covers the services or materials upon which recovery is sought, recovery in *quantum meruit* will not be permitted. Truly, 744 S.W.2d at 936. But, the existence of an express contract does not preclude recovery in *quantum meruit* for the reasonable value of services rendered and accepted which are not covered by the contract. Black Lake Pipe Line Co. v. Union

---

[6] We acknowledge that AMS's *quantum meruit* claim is, by definition, extra-contractual. However, the payment bond excepts claimants from providing notice of claims when in direct contract with Concept. Exceptions to coverage contained within an insurance policy are to be strictly construed against the insurer and in favor of coverage, and any intent to exclude coverage must be expressed in clear and unambiguous language. National Union Fire Ins. Co. of Pittsburgh, Pa. v. Hudson Energy Co., 811 S.W.2d 552, 555 (Tex. 1991). In the present case, the terms of the bond allow for a reasonable interpretation exempting AMS from the notice requirement, and we are therefore compelled to interpret the policy in favor of coverage.

Constr. Co., 538 S.W.2d 80, 86 (Tex. 1976), overruled on other grounds by Sterner v. Marathon Oil Co., 767 S.W.2d 686, 690 (Tex. 1989).

The trial court's findings of fact make it clear that the extra work exceeded the scope of the work covered by the express contracts. Specifically, the trial court found that the work covered by the express contracts could be performed "with the use of 'glove bags' that do not involve area containment and donning of hazmat suits." However, the extra work that was requested by Scheuerer "included removal of carpet, which did require these extra precautions." Appellants' argument simply states that the express contracts covered "asbestos abatement to be conducted by Appellee" and that, because the express contracts covered asbestos abatement, AMS is precluded from recovery in *quantum meruit* based on the provision of any asbestos abatement services. Appellants' argument, however, wholly fails to address the trial court's finding that the scope of the asbestos abatement covered by the express contracts was exceeded by the extra work as evidenced by the necessity that AMS take the specified extra precautions. Finding that there is significant evidence in the record to support the trial court's finding that the extra work exceeded the scope of the express contracts, we are bound by the trial court's factual finding. See McGalliard v. Kuhlmann, 722 S.W.2d 694, 696 (Tex. 1986) (when a finding of fact is unchallenged, it is binding on an appellate court unless the contrary is established as a matter of law or there is no evidence to support the finding). Consequently, we overrule appellants' ninth issue.

18

Issues 11 & 15: Timeliness of Judgment

Appellants contend that the trial court failed to comply with the requirements of Texas Government Code section 74.059(c)(2),[7] when it failed to enter judgment in this case for more than two and a half years after the date of trial. In their analysis of the alleged harm caused by this delay, appellants cite Coiner's conviction for improper disposal of asbestos.[8] AMS responds contending that appellants failed to complain of the delay in the trial court, and case law requires a showing of how the delay caused harm before a delay is reversible. AMS contends that appellants fail to show how Coiner's conviction caused appellants harm or would necessitate that they be afforded a new trial.

Our review of the record does not indicate that appellants ever sought to obtain the trial court's ruling in this case nor did appellants bring to the trial court's attention its failure to comply with Texas Government Code section 74.059(c)(2) at any time before the trial court rendered its judgment. Following the trial court's judgment, appellants did identify this issue in their timely filed motion for new trial. Thus, the issue was preserved. See TEX. R. APP. P. 33.1(b).

---

[7] Section 74.059(c)(2) provides, "(c) A district, statutory probate, or statutory county court judge shall: (2) rule on a case within 90 days after the case is taken under advisement." TEX. GOV'T CODE ANN. § 74.059(c)(2) (West 2005).

[8] Appellants' issue 15 does not challenge the judgment as being untimely, but does challenge the trial court's denial of appellants' motion for new trial based on Coiner's conviction. Since that issue contends that appellants are entitled to a new trial on the same basis upon which they contend that the trial court's untimely judgment caused them harm, we will analyze the issues together.

A trial court's failure to comply with section 74.059(c)(2) is not automatically reversible error.  See Smith v. Montemayor, No. 03-02-00466-CV, 2003 Tex.App. LEXIS 5099, at *31-*32 (Tex.App.—Austin June 19, 2003, no pet.) (mem. op.).  The complaining party bears the burden of demonstrating that the trial court's delay in rendering judgment probably caused the rendition of an improper judgment.  Id. at *32.

To meet this burden, appellants contend that they were harmed by the passage of the three-year period after AMS's forfeiture of its corporate charter, and by the intervening federal indictment and conviction of Coiner for improper disposal of asbestos.  However, appellants in no way identify the significance of the passage of three years after AMS's forfeiture of its corporate charter nor do they identify how such an occurrence caused them harm.  Similarly, appellants identify that Coiner was indicted and convicted of improper disposal of asbestos, but make no attempt to explain to this Court how this conviction impacts the present case.  Further, evidence provided by appellants indicates that Coiner was convicted of negligent release of hazardous air pollutants, and that the actions upon which this conviction is based occurred after AMS had completed its work on the BW project.  As such, we conclude that appellants have failed to meet their burden of demonstrating that the trial court's delay in rendering judgment probably caused the rendition of an improper judgment.  Likewise, we conclude that appellants have failed to establish that Coiner's conviction entitles appellants to a new trial.  We overrule appellants' eleventh and fifteenth issues.

Issue 12: Waiver and Estoppel

Appellants contend that the evidence established their affirmative defenses of waiver or estoppel as a matter of law. Appellants' contention is premised on AMS's acceptance of payment for the work covered by the agreements, while Concept refused to pay for the extra work reflected in the invoices after August of 2004. Appellants contend that AMS's silence from August of 2004, when Concept stopped paying for the extra work, until August of 2005, when AMS filed the present suit, constitutes a waiver of AMS's right to recover on the extra work. Alternatively, appellants contend that AMS's failure to provide requested documentation to support the extra work performed prior to trial estops AMS from recovering on the extra work. AMS responds that Concept's request for backup documentation on the extra work was disputed and that, in any event, its failure to provide documentation to support its claim for payment does not constitute an "intentional relinquishment of a known right."

Our review of the record reveals that AMS continued to perform extra work for Concept after Concept stopped paying for the extra work, but that the period of time during which AMS performed extra work while not being paid was from September of 2004 to April of 2005. This is only a period of eight months. Further, evidence was presented that Concept had paid for the extra work on the first four invoices. AMS presented evidence that it continued to perform the extra work beyond this point in good faith and because it thought that Concept may have been attempting to get change orders approved by BW which was delaying payment for the extra work. However, once Coiner determined that Concept was not going to pay AMS for the extra work,

21

AMS stopped performing the extra work. Thus, AMS did not take a course of action inconsistent with claiming a right to payment for extra work for such an extended period that it can be fairly said that AMS waived its right to payment. See Sun Exploration & Prod. Co. v. Benton, 728 S.W.2d 35, 37 (Tex. 1987) (waiver requires the intentional relinquishment of a known right or engaging in intentional conduct inconsistent with claiming that right).

As to the claim of estoppel, appellants fail to cite to any authority that would support their contention that a failure to substantiate a claim for payment estops a person from seeking judicial recourse for the claim. While it was clearly incumbent upon AMS to establish the value of the services it provided to Concept in order to recover on its *quantum meruit* claim, nothing in the law requires that a plaintiff must establish that value before filing suit and substantiate that value in a manner acceptable to the benefitted party or else be estopped from asserting a *quantum meruit* claim.

Finding no evidence to support appellants' affirmative defenses of waiver or estoppel, we overrule appellants' twelfth issue.

Issues 13 & 14: Concept's Breach of Contract Counterclaim

Appellants contend that they established their counterclaim for breach of contract as a matter of law and that, as a result, they are entitled to at least $20,080 in actual damages as well as $25,000 in attorney's fees. AMS responds that it was Concept that breached the contract and, therefore, the trial court did not err in denying appellants' counterclaim. Further, AMS contends that the $5,000 in attorney's fees attributable to

22

the removal of AMS's mechanic's lien is being raised for the first time on appeal and is, therefore, waived.

Appellants premise their contention that they are entitled to recover for their breach of contract counterclaim on their decision to retain a third-party asbestos abatement company to complete the contract work on the project that was not completed by AMS. However, their argument fails to address the uncontroverted evidence that AMS remained ready to complete the work identified in the agreements upon being recalled by Concept. However, apparently because AMS ceased performing the extra work for which it was not being paid, Concept did not recall AMS to complete the work, but rather chose to retain a third-party to complete the work on the project. As such, the evidence establishes that it was Concept, not AMS, that breached the contracts. Thus, we conclude that the trial court did not err in denying appellants' counterclaim.

Having determined that appellants are not entitled to recover on their breach of contract counterclaim, their attorney's fees issue is reduced to appellants' contention that AMS stipulated that Concept was entitled to $5,000 in attorney's fees relating to the removal of a mechanic's lien. While the record does reflect that AMS acknowledged an agreement that $5,000 in attorney's fees for appellants would be attributable to removal of the lien, this acknowledgement was part of a pre-trial stipulation that the parties had agreed "that $25,000 was a reasonable and necessary attorneys' fee through trial for each side's attorney, and agreed that of that sum, with respect to Defendants, $5,000 of that would be reasonably attributable to the Motion to Remove Mechanic's Lien . . . ."

23

(emphasis added). Looking at the precise language used by AMS, we construe the agreement to simply indicate that the parties agreed as to what would constitute a reasonable and necessary attorney fee award, and that this agreement, as it relates to appellants, has factored in $5,000 for the removal of the lien. Thus, nothing in the agreement obligated the trial court to make a separate award of attorney's fees to appellants relating to the removal of the lien.

Further, appellants cite Texas Property Code section 53.156 as statutory support for their entitlement to these attorney's fees. However, section 53.156 permits the trial court to award costs and reasonable attorney's fees as would be equitable and just. TEX. PROP. CODE ANN. § 53.156 (West 2007). Appellants have wholly failed to show that the trial court abused its discretion by not awarding them $5,000 as attorney's fees relating to removal of the mechanic's lien.

Finally, appellants failed to address the trial court's award of attorney's fees in either their motion for new trial or in their motion for reconsideration of motion for new trial. Thus, we conclude that appellants failed to bring their construction of the pre-trial stipulation regarding attorney's fees to the trial court's attention and, therefore, have waived any objection to the trial court's award. See TEX. R. APP. P. 33.1.

We overrule appellants' thirteenth and fourteenth issues.

## Conclusion

Having overruled each of appellants' fifteen issues, we affirm the judgment of the trial court.

Mackey K. Hancock
Justice