

## In The
## Court of Appeals
## Sixth Appellate District of Texas at Texarkana

No. 06-18-00062-CV

KHOSROW SADEGHIAN, Appellant

V.

BILLY AND KAREN WRIGHT, Appellees

On Appeal from the 211th District Court
Denton County, Texas
Trial Court No. 17-4755-211

Before Morriss, C.J., Burgess and Moseley,* JJ.
Memorandum Opinion by Chief Justice Morriss

*Bailey C. Moseley, Justice, Retired, Sitting by Assignment

MEMORANDUM OPINION

After agreeing, in mid-2012, to a brief written executory contract for the purchase by Billy and Karen Wright from Khosrow Sadeghian of a one-acre tract in Denton County,[1] with a partial down payment and a partial payment to be paid out in monthly installments to the seller, the Wrights and Sadeghian pursued a course other than that set out in the written contract. When the would-be buyers and sellers ended up disagreeing, the Wrights sued Sadeghian on several claims, including breach of contract and alleged violations of the Texas Property Code. The Wrights filed a traditional motion for partial summary judgment on these claims after their requests for admissions were deemed admitted because of Sadeghian's failure to respond. The trial court denied Sadeghian's motion to withdraw the deemed admissions, granted the Wrights' motion for partial summary judgment, and set the case for trial on Sadeghian's counterclaims. On the day of trial, because Sadeghian had still not responded to the Wrights' discovery requests, the trial court disallowed the presentation of any evidence by Sadeghian on his counterclaims and awarded final judgment to the Wrights.

On appeal, Sadeghian argues that the trial court erred when it overruled his motion to withdraw deemed admissions, excluded any evidence regarding his counterclaims, and granted the summary judgment in the face of a genuine issue of material fact as to the existence or breach of a valid executory contract for sale of real property. While we rule that (1) Sadeghian's discovery violations supported the denial of his motion to withdraw the deemed admissions and

---

[1]Originally appealed to the Second Court of Appeals, this case was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts. *See* TEX. GOV'T CODE ANN. § 73.001 (West 2013). We follow the precedent of the Second Court of Appeals in deciding this case. *See* TEX. R. APP. P. 41.3.

(2) Sadeghian's discovery violations supported the trial court's exclusion of evidence supporting his counterclaims, we also conclude that (3) the Wrights' own summary judgment evidence established genuine issues of material fact on their claims. Therefore, we affirm the discovery and evidentiary rulings of the trial court, but we reverse the trial court's summary judgment and remand the matter for further proceedings consistent with this opinion.

*(1) Sadeghian's Discovery Violations Supported the Denial of his Motion to Withdraw the Deemed Admissions*

The Wrights' petition, filed on June 8, 2017, included requests for disclosure that were served on and received by Sadeghian. On August 23, 2017, requests for admissions, requests for production, and interrogatories were also served on Sadeghian's counsel, Stephen Stephens, at the email address provided by him. The affidavit of the Wrights' counsel, R. Scott Alagood, averred that he had not received any discovery responses as of September 22, 2017. On October 4, 2017, Alagood notified Stephens by letter of the failure to respond to the Wrights' various discovery requests. Alagood's affidavit and the attached exhibits established that the letter was emailed to Stephens and was also sent by certified mail. The green card bearing Stephens' signature demonstrated that he received Alagood's letter on October 24, 2017. Still, Sadeghian did not send discovery responses.

Months later, on January 22, 2018, the Wrights filed their traditional motion for summary judgment based, in large part, on the deemed admissions. After Stephens indicated his availability for a hearing on the motion for summary judgment by email on January 24, the trial court set March 23, which was also the scheduled discovery deadline, as the hearing date. On February 1, 2018, Sadeghian hired new counsel who filed, on February 20, an amended answer containing new

3

counterclaims.  On March 9, Sadeghian filed a motion to strike the deemed admissions, arguing that he did not know of the propounded discovery and that Stephens had not responded to his telephone calls and emails.

At the March 23, 2018, hearing, the Wrights alleged that Sadeghian's claim that Stephens was not answering telephone calls or emails was false.  In support, the Wrights attached a pleading in another case that Stephens had filed on Sadeghian's behalf on December 8, 2017, and the email from Stephens on January 24, 2018.  The Wrights also argued that Sadeghian had admitted to receiving the petition, which included the requests for disclosure, but had not yet made the requested disclosures.  They also argued that, even though Sadeghian had acquired new counsel, he failed to serve any discovery responses or request leave of court to file late responses.  Thus, the Wrights argued that Sadeghian was purposefully thwarting discovery to surprise them at the trial, which had long-since been set for May 7, 2018.

To demonstrate that Sadeghian was acting in bad faith, the Wrights cited to three other cases containing orders, all entered in 2017, compelling Sadeghian to respond to discovery and sanctioning him for failure to respond, including a case where an attorney other than Stephens was listed as the attorney of record.[2]  The Wrights argued that Sadeghian's pattern of failing to timely respond to discovery supported a finding of bad faith.  They also cited to an opinion upholding a

---

[2]More specifically, the orders sanctioning Sadeghian for failure to respond to discovery were entered in the following: (1) a January 9, 2017, order in *Bryan Sanders & LeAnn Sanders v. Khosrow Sadeghian and Michael Moore*, cause number CV-2015-00861 in the County Court at Law No. 2 of Denton County, Texas; (2) an August 9, 2017, order in *Beau D. Schultz and Amber L. Frisch v. Kamy Trust, a/k/a Kamy Real Estates Trust, Reram, Inc, Trustee and Kohnsrow Sadeghian, Individually s/b/a Peram Realty*, cause number CV-2016-01956, in the County Court at Law No. 2 of Denton County, Texas; and (3) an October 11, 2017, order in *Roberto Ramirez; Angelina Ramirez v. Kohnsrow Sadeghian; Khosrow Sadeghian, Trustee of the Kamy Real Property Trust; Reram, Inc.*, cause number 17-03474-442 in the 442nd Judicial District Court of Denton County, Texas.

4

trial court's sanction of $70,210.53 against Sadeghian for bringing a groundless lawsuit in bad faith for purposes of harassment in light of testimony from Sadeghian's former employee, a non-party to the case, that he was personally aware of Sadeghian's "practice of filing lawsuits as a form of intimidation." *Sadeghian v. Hudspeth*, No. 02-11-00095-CV, 2012 WL 3758084, at \*9 (Tex. App.—Fort Worth Aug. 30, 2012, no pet.) (mem. op.). The Fort Worth Court of Appeals noted that the former employee

> testified that Sadeghian had "bragged on more than one occasion" about using the legal system "to his advantage to gain [the] upper hand on individuals and crush individuals in regard to the fact that he had so much money that he could do this forever and that he just ran the clock on most people with legal bills and legal proceedings." He stated that Sadeghian told him that he filed lawsuits as a way to make money.

*Id.*

It was undisputed that the Wrights' discovery requests were properly served and, though faced with the Wrights' arguments, Sadeghian offered no evidence at the hearing and did not explain why new counsel had not yet filed any discovery responses. Additionally, at the hearing, Sadeghian failed to ask for extra time to file his responses. Thus, the trial court denied Sadeghian's request to withdraw the deemed admissions. It concluded that the Wrights would be prejudiced by the withdrawal of the deemed admissions and by the fact that Sadeghian's amended petition had contained several new counterclaims. The trial court later denied Sadeghian's motion for reconsideration of that ruling after expressly finding that he acted with callous disregard of the discovery rules. It also excluded any evidence that would run contrary to the deemed admissions for purposes of the summary judgment hearing.

5

"We review discovery rulings for an abuse of discretion." *Fethkenher v. Kroger Co.*, 139 S.W.3d 24, 29 (Tex. App.—Fort Worth 2004, no pet.) (citing *In re CSX Corp.*, 124 S.W.3d 149, 152 (Tex. 2003) (orig. proceeding)). "A trial court abuses its discretion when it acts without reference to guiding rules and principles." *Id.* (citing *In re Colonial Pipeline Co.*, 968 S.W.2d 938, 941 (Tex.1998) (orig. proceeding)); *see Wheeler v. Green*, 157 S.W.3d 439, 443 (Tex. 2005) ("We recognize that trial courts have broad discretion to permit or deny withdrawal of deemed admissions, but they cannot do so arbitrarily, unreasonably, or without reference to guiding rules or principles.").

When a party is served with a request for admissions, the party "must serve a written response on the requesting party within 30 days after service of the request." TEX. R. CIV. P. 198.2(a). "If a response is not timely served, the request is considered admitted without the necessity of a court order." TEX. R. CIV. P. 198.2(c). A matter deemed admitted by operation of this rule is "conclusively established as to the party making the admission unless the court permits the party to withdraw or amend the admission." TEX. R. CIV. P. 198.3. Thus, "admissions, once made or deemed by the court, may not be contradicted by any evidence, whether in the form of live testimony or summary judgment affidavits." *Luke v. Unifund CCR Partners*, No. 02-06-00444-CV, 2007 WL 2460327, at *2 (Tex. App.—Fort Worth Aug. 31, 2007, no pet.) (mem. op.) (citing *Smith v. Home Indem. Co*., 683 S.W.2d 559, 562 (Tex. App.—Fort Worth 1985, no writ)).

The court may permit the party to withdraw or amend the admission if:

> (a) the party shows good cause for the withdrawal or amendment; and
>
> (b) the court finds that the parties relying upon the responses and deemed admissions will not be unduly prejudiced and that the presentation

6

of the merits of the action will be subserved by permitting the party to amend or withdraw the admission.

TEX. R. CIV. P. 198.3. "Good cause is established by showing the failure involved was an accident or mistake, not intentional or the result of conscious indifference." *Wheeler*, 157 S.W.3d at 442. "Undue prejudice depends on whether withdrawing an admission or filing a late response will delay trial or significantly hamper the opposing party's ability to prepare for it." *Id.* at 443.

Sadeghian offered no evidence of good cause at the hearing. He also did not challenge the Wrights' argument that they would be unduly prejudiced if the trial court permitted withdrawal of the deemed admissions, given that (1) the hearing was set on the same day as the March 23 discovery deadline, (2) trial was set for May 7, (3) they would be wholly surprised at trial because they did not have the benefit of any answered discovery, and (4) allowing a late response would delay the trial. Yet, "[c]onstitutional imperatives favor the determination of cases on their merits rather than on harmless procedural defaults." *Marino v. King*, 355 S.W.3d 629, 634 (Tex. 2011); *Wheeler*, 157 S.W.3d at 442.[3]

Although a party moving to withdraw admissions ordinarily must prove the requirements of Rule 198.3, when the deemed admissions are "merits-preclusive," such as some of the requests propounded by the Wrights, good cause exists absent "flagrant bad faith or callous disregard of the rules" by the party seeking the withdrawal. *Id.* at 634.

---

[3]Sadeghian relies heavily on *Wheeler* and *Marino*. However, both cases are easily distinguished since (1) they both involved pro se parties who failed to timely respond to requests for admissions and (2) the record in those cases failed to contain any evidence of bad faith or callous disregard for the rules. *See Marino*, 355 S.W.3d at 634; *Wheeler*, 157 S.W.3d at 443–44 ("We certainly agree that pro se litigants are not exempt from the rules of procedure. . . . Having two sets of rules—a strict set for attorneys and a lenient set for pro se parties—might encourage litigants to discard their valuable right to the advice and assistance of counsel. But when a rule itself turns on an actor's state of mind (as these do here), application may require a different result when the actor is not a lawyer.").

7

Here, much of Sadeghian's brief focuses on the trial court's ruling that flagrant bad faith was not shown.[4] However, the trial court concluded that callous disregard for the discovery rules was shown.[5] In making this finding, the trial court noted that Sadeghian was properly served through counsel, the Wrights informed Stephens that he had missed the deadline to respond, and Stephens still failed to respond. Although Sadeghian claimed he was unaware of the requests for admissions and Stephens was unresponsive to telephone calls, the Wrights asserted that those representations were false since Stephens was working on a different case for Sadgehian and was responsive to their email scheduling the hearing. While Sadeghian attempted to distance himself from Stephens' acts and omissions, an attorney's callous disregard for the rules can support the denial of a motion to withdraw deemed admissions. *See Montgomery v. Mattucci*, No. 02-11-00418-CV, 2013 WL 2393236, at *6 (Tex. App.—Fort Worth May 23, 2013, no pet.) (mem. op.). Moreover, Sadeghian was duly served with the requests for disclosure, but had failed to respond to those as well. Sadeghian hired new counsel, who could have, but failed to, ask permission to file late responses to the requests for admissions. No explanation was offered by Sadeghian's new counsel as to the reason for their omissions. The Wrights also demonstrated that Sadeghian was aware of his responsibility to answer discovery since he was a named party in many other cases,

---

[4]We note that Sadeghian relies on evidence which is not a part of our appellate record. We cannot consider this evidence. *See In re R.S.*, No. 02-16-00288-CV, 2017 WL 3821861, at *2 (Tex. App.—Fort Worth Aug. 31, 2017, no pet.) (mem. op.).

[5]Sadeghian also argues that, at the initial hearing on the matter, the trial court repeatedly mentioned the conscious indifference standard subsumed in Rule 198.3 and never once mentioned the phrase "callous disregard." However, the trial court clarified at a subsequent hearing that it had found callous disregard and made sure to incorporate that standard in its order denying Sadeghian's motion for reconsideration.

but had a pattern of unwillingness to do so. They also showed that Sadeghian had previously been determined to exhibit bad faith in litigation.

Under these unique circumstances, we find that the trial court could properly determine that Sadeghian was guilty of callous disregard. *See Williams v. Am. First Lloyds Ins.*, No. 02-12-00318-CV, 2013 WL 2631141, at *4 (Tex. App.—Fort Worth June 13, 2013, pet. denied) (mem. op.). Thus, we cannot conclude that Sadeghian's due process rights were violated or that the trial court abused its discretion in overruling Sadeghian's motion to withdraw the deemed admissions. We overrule this point of error.

*(2)* *Sadeghian's Discovery Violations Supported the Trial Court's Exclusion of Evidence Supporting his Counterclaims*

In addition to moving for summary judgment based on deemed admissions, the Wrights prayed that Sadeghian be prohibited from introducing evidence at trial on undisclosed matters. The trial court heard the matter on the May 7 trial date and granted the Wrights' motion. Sadeghian argues that the trial court's rulings were in error.

This point of error is governed by Rule 193.6 of the Texas Rules of Civil Procedure, which states as follows:

> (a) *Exclusion of Evidence and Exceptions.* A party who fails to make, amend, or supplement a discovery response in a timely manner may not introduce in evidence the material or information that was not timely disclosed, or offer the testimony of a witness (other than a named party) who was not timely identified, unless the court finds that:
>
> > (1) there was good cause for the failure to timely make, amend, or supplement the discovery response; or
> >
> > (2) the failure to timely make, amend, or supplement the discovery response will not unfairly surprise or unfairly prejudice the other parties.

9

(b)     *Burden of Establishing Exception.*  The burden of establishing good cause or the lack of unfair surprise or unfair prejudice is on the party seeking to introduce the evidence or call the witness.  A finding of good cause or of the lack of unfair surprise or unfair prejudice must be supported by the record.

(c)     *Continuance.*  Even if the party seeking to introduce the evidence or call the witness fails to carry the burden under paragraph (b), the court may grant a continuance or temporarily postpone the trial to allow a response to be made, amended, or supplemented, and to allow opposing parties to conduct discovery regarding any new information presented by that response.

TEX. R. CIV. P. 193.6.  "The rule is mandatory, and the penalty—exclusion of evidence—is automatic, absent a showing of good cause, lack of unfair surprise, or lack of unfair prejudice." *Santana v. Santana*, No. 02-15-00140-CV, 2016 WL 278781, at *1 (Tex. App.—Fort Worth Jan. 21, 2016, no pet.) (mem. op.) (citing *Good v. Baker*, 339 S.W.3d 260, 271 (Tex. App.—Texarkana 2011, pet. denied)); *see White v. Perez*, No. 02-09-00251-CV, 2010 WL 87469, at *2 (Tex. App.—Fort Worth Jan. 7, 2010, pet. denied) (mem. op.) ("[T]he trial court possesses no discretion; it must exclude evidence not timely provided . . . in response to a discovery request in the absence of evidence showing good cause for the failure to respond or the lack of prejudice to the party opposing the admission of the evidence.").

Sadeghian offered no evidence of good cause for his failure to respond to the Wrights' discovery requests.  On appeal, he simply argues that (1) Rule 193.6 does not apply because he only sought to admit his own testimony in support of his counterclaims and (2) the Wrights suffered no unfair surprise or prejudice because (a) the only documentary evidence he wished to admit was the evidence attached to his response to the Wrights' partial summary judgment motion, and (b) the legal theories under which he sought to recover were included in his amended petition.

10

Sadeghian's first argument has been expressly rejected by our sister court in *Cornejo v. Jones*, No. 05-12-01256-CV, 2014 WL 316607, at *2 (Tex. App.—Dallas Jan. 29, 2014, no pet.) (mem. op.). We agree with our sister court's finding that the parenthetical reference "(other than a named party)" "essentially states that named parties can testify at trial even if they do not list themselves as a fact witness in response to requests for disclosure[, but] . . . does not state or imply that parties are not required to respond to interrogatories or other types of discovery requests." *Id.* In other words, while a party may testify if not previously disclosed, the plain language of the Rule states that no evidence may be presented on "material or information that was not timely disclosed." TEX. R. CIV. P. 193.6. Here, because Sadeghian never disclosed the legal theories and factual bases of his counterclaims or the amount or method of calculating damages, as required by Rule 194.2 of the Texas Rules of Evidence, and did not answer any interrogatories, he "was not exempt from the penalty of having his testimony excluded at trial." *Cornejo*, 2014 WL 316607, at *2; *see Jackson v. Maul*, No. 04-02-00873-CV, 2003 WL 22295332, at *2 (Tex. App.—San Antonio Oct. 8, 2003, no pet.) (mem. op.).

Next, it was Sadeghian's burden to demonstrate lack of unfair surprise or unfair prejudice. *See Santana*, 2016 WL 278781, at *2. Sadeghian argues that he met that burden by virtue of the legal theories listed in his counter-petition and the attachments to the summary judgment response. In support, Sadeghian cites *Concept General Contracting, Inc. v. Asbestos Mantenance Services, Inc.*, 346 S.W.3d 172 (Tex. App.—Amarillo 2011, pet. denied), a case which is easily distinguishable. First, discovery responses had been filed in that case, and the only issue was whether the response to the request to disclose legal theories and factual bases of the appellee's

11

claims was adequate. *Id.* at 179. Specifically, the appellants argued that the following response was insufficient to establish that the appellees sought recovery for quantum meruit:

> Plaintiff contracted with Concept General Contracting, Inc. to perform asbestos abatement services, and performed all services requested until it became apparent that Concept was refusing to pay for same, at which time work was suspended pending resolution of outstanding receivables. Thereafter, Concept requested that plaintiff remove its remaining materials from the job.

*Id.* Because the theory of quantum meruit was "always pled," the trial court denied the appellants' request to exclude evidence under Rule 193.6(a). *Id.* Thus, in reviewing the trial court's decision under an abuse of discretion standard, the appellate court determined that the trial court did not act without reference to guiding rules and principles in determining that the appellants were afforded appropriate notice of the quantum meruit theory and were not unfairly surprised or prejudiced. *Id.* at 179–80.

Here, Sadeghian did not respond to discovery requests. Thus, he sought to introduce evidence of new counterclaims, which were pled only one month before the expiration of the discovery deadline, on which the Wrights were unable to conduct discovery as a result of his actions. Additionally, the trial court sustained objections to exhibits attached to Sadeghian's summary judgment response at the March 23 hearing because, among other things, some of the exhibits contradicted the deemed admissions and none of them were previously produced as required by the discovery rules. Sadeghian's argument that the Wrights would not suffer unfair surprise or prejudice at trial because he sought only to introduce these exhibits fails because the trial court could have concluded that the Wrights would not expect the previously struck exhibits to be reoffered at trial. In light of these facts, we find that the trial court did not abuse its discretion

12

in concluding that Sadeghian failed to meet his burden to demonstrate lack of unfair surprise or prejudice.

"Even if the party seeking to call the witness fails to carry the burden of establishing an exception to the automatic exclusion, the trial court may grant that party's request for a continuance and temporarily postpone the trial." *Santana*, 2016 WL 278781, at *1 (citing TEX. R. CIV. P. 193.6(c)). Here, Sadeghian never requested a continuance or asked for additional time to respond to the Wrights' discovery requests. Accordingly, because Sadeghian did not avail himself of "several built-in safeguards creating exceptions to the automatic exclusion," we cannot conclude that the trial court abused its discretion "by following rule 193.6's mandate and by automatically excluding" undesignated witnesses and evidence of previously undisclosed matters. *Id.* at *3; *see White*, 2010 WL 87469, at *1. We therefore overrule this issue.[6]

*(3)     The Wrights' Own Summary Judgment Evidence Established Genuine Issues of Material Fact on their Claims*

The grant of a trial court's summary judgment is subject to de novo review by appellate courts. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). In making the required review, we deem as true all evidence which is favorable to the nonmovant, we indulge every reasonable inference to be drawn from the evidence, and we resolve any doubts in the nonmovant's favor. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). When the trial court does not specify the basis for its ruling, we must affirm a summary judgment if any

---

[6]On appeal, Sadeghian argues that the trial court's rulings amounted to a de facto death penalty sanction. However, "a trial court's imposition of the automatic . . . exclusion mandated by rule 193.6 is not a death-penalty sanction and is not reviewed as such." *Santana*, 2016 WL 278781, at *2 n.4 (citing *TransAm. Nat. Gas Corp. v. Powell*, 811 S.W.2d 913, 917 (Tex. 1991)).

13

of the grounds on which judgment is sought are meritorious. *Merriman v. XTO Energy, Inc.*, 407 S.W.3d 244, 248 (Tex. 2013).

To be entitled to traditional summary judgment, a movant must establish that there is no genuine issue of material fact so that the movant is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). Once the movant produces evidence entitling it to summary judgment, the burden shifts to the nonmovant to present evidence raising a genuine issue of material fact. *Walker v. Harris*, 924 S.W.2d 375, 377 (Tex. 1996).

The parties' "Agreement to Purchase Property" called for $2,000.00 of the $166,800.00 sale price to be paid down when the contract was executed, $29,000.00 to be paid at closing, and the balance to be represented by a promissory note "with payments of approximately $1,339.64 per month until maturity." The written contract acknowledged Sadeghian's obligation to execute and deliver at closing "a Special Warranty Deed with Vendor's Lien," simultaneous with the execution of the promissory note. Although the Agreement set a closing date of July 1, 2012, the closing never occurred, no promissory note was executed, and Sadeghian never received the $29,000.00 down payment described in the contract. However, the Wrights alleged that Sadeghian allowed them to move onto the property and orally promised to deliver title after they had paid the purchase price.

After making monthly payments totaling $82,252.24, the Wrights requested delivery of the deed and attempted to tender a promissory note for the remaining balance. Sadeghian rejected the Wrights' attempt and sent them notice to vacate the property as a result of an alleged failure to

14

make regular and timely monthly payments. The Wrights vacated the property and sued Sadeghian for breach of contract, promissory estoppel, fraud, and violations of both the Texas Deceptive Trade Practices Act and the Texas Property Code, among other things.

The Wrights' motion for partial summary judgment was based on their claim of breach of contract and their clams under the Texas Property Code. The motion was supported by the deemed admissions and Billy Wright's affidavit. Sadeghian made the following, relevant, deemed admissions:

- On June 1, 2012, there was a "Rent to Own" sign on the property.
- He had sold the property to the Wrights.
- The property was uninhabitable in 2012.
- The Wrights had informed him that they would make improvements to the property.
- He had not provided a survey or plat of the property to the Wrights.
- He had not provided them with a document describing any encumbrances that affected title to the property .
- He had not provided the Wrights with notice informing them of the condition of the property.
- He did not disclose tax and insurance coverage information related to the property before the Agreement was signed.
- He did not disclose the interest rate charged, the dollar amount of interest charged, the principal and interest to be paid, and late charges that might have been assessed for the term.
- He did not provide any information related to possible prepayment penalties.
- He did not provide notices required by Section 5.074 of the Texas Property Code.
- He did not record the Agreement in the Denton County real property records.
- He did not provide the Wrights with an annual accounting
- He did not transfer recorded legal title to the property to the Wrights.

In his affidavit, Mr. Wright swore that Sadeghian had offered to sell the property if the Wrights "would make a $2,000.00 down payment, and pay $1,339.64 per month until the purchase price of $166,800 was paid in full." Although the closing contemplated by the written agreement never occurred, Mr. Wright claimed that Sadeghian gave him "keys to the house and continued to

15

represent that [they] would receive a deed to the Property once the purchase price was paid in full." The affidavit averred that the Wrights had spent $16,803.25 to improve the property and had paid Sadeghian a total of $80,252.24. As a result of Sadeghian's alleged Texas Property Code violations, the Wrights moved from the property, sought the remedy of rescission, and demanded reimbursement of all money paid to Sadeghian and all sums spent to improve the property.

After reviewing this evidence, the trial court granted the Wrights' partial summary judgment and entered final judgment awarding them $97,351.00 in damages, $10,500.00 in statutory damages, and $53,956.50 in attorney fees for their breach of contract and Texas Property Code claims.

Sadeghian argues that genuine issues of material fact precluded the trial court's entry of the partial summary judgment. Even given the exclusion of Sadeghian's evidence,[7] we agree that summary judgment was improper because there is a genuine question as to whether there was an enforceable executory contract for sale as contemplated by Subchapter D, Chapter 5, of the Texas Property Code and the Wrights' own summary judgment evidence created fact issues as to the terms of the arrangement with Sadeghian and, therefore, the element of breach.

All of the Wrights' claims under the Texas Property Code were governed by Subchapter D, Chapter 5, titled "Executory Contract for Conveyance." *See* TEX. PROP. CODE ANN. § 5.061–

---

[7]"Admissions of fact on file at the time of a summary judgment hearing are proper summary judgment proof and thus will support a motion for summary judgment." *Williams v. Am. First Lloyds Ins.*, No. 02-12-00318-CV, 2013 WL 2631141, at *3 (Tex. App.—Fort Worth June 13, 2013, pet. denied) (mem. op.) (citing TEX. R. CIV. P. 166a(c)). Moreover, "Texas Rule of Civil Procedure 193.6, which provides for the exclusion of evidence due to an untimely response to a discovery request, applies in a summary judgment proceeding." *Fort Brown Villas III Condo. Ass'n, Inc. v. Gillenwater*, 285 S.W.3d 879, 880 (Tex. 2009). Thus, "discovery that is not timely disclosed and witnesses that are not timely identified are inadmissible as evidence." *Id.* at 882.

.086 (West 2014 & West Supp. 2018). Under Section 5.072, "[a]n executory contract is not enforceable unless the contract is in writing and signed by the party to be charged." TEX. PROP. CODE ANN. § 5.072(a).

Here, the agreement was titled "Agreement to Purchase" and set a closing date of July 1, 2012. The agreement provided, "For the consideration of the Purchase Price Seller shall sell, convey, and grant, the Property, 'AS-IS' to the Buyer at Closing."[8] The agreement contemplated that $29,000.00 of the purchase price was due at closing and the Wrights would execute a promissory note for the remaining sum. Section 5.062 states that "subchapter [D] does not apply to an executory contract that provides for the delivery of a deed from the seller to the purchaser within 180 days of the date of the final execution of the executory contract." TEX. PROP. CODE ANN. § 5.062(c); *see Shook v. Walden*, 368 S.W.3d 604, 624 (Tex. App.—San Antonio 2012, pet. denied).

It is undisputed that there was no closing on the written agreement and that the Wrights did not execute the promissory note contemplated by the agreement by the closing date. Mr. Wright's affidavit did not mention the $29,000.00 down payment, and the Wrights' documentation of money paid to Sadeghian showed that it was never made. It also showed that the initial $2,000.00 down payment required at the execution of the June 2012 agreement was not paid and that they instead paid a security deposit in March 2013. Because the summary judgment evidence showed that the Wrights did not comply with the terms of the written agreement they seek to enforce under Subchapter D, Chapter 5, of the Texas Property Code, there are genuine issues of material fact as

---

[8]The agreement obligated Sadeghian to convey "a Special Warranty Deed with Vendor's Lien" at closing.

17

to whether the trial court's summary judgment on the Wrights' Texas Property Code claims was proper.

Additionally, the express terms of the written agreement were contradicted by the Wrights' assertion that Sadeghian orally promised to deliver title to the property after they had paid the full purchase price, without the $29,000.00 down payment. To the extent that Sadeghian made a separate oral promise to deliver title on payment of the purchase price, the Wrights' evidence demonstrated that they had paid Sadeghian $80,252.24 at the time they demanded legal title, far short of the total purchase price. Yet, Billy's affidavit stated that Sadeghian "offered to sell the Property" *if* they would "pay $1,339.64 per month *until* the purchase price of $166,800.00 was paid in full." Although they attempted to execute a promissory note for the balance due, the summary judgment evidence did not conclusively establish that Sadeghian was required to accept it because, under the written contract, the condition precedent to Sadeghian's obligation to convey the property was for the Wrights to pay $1,339.64 per month until they had paid the full purchase price. Further, there were fact issues as to other terms of the oral contract since the Wrights' evidence showed that they were paying late fees for payments made after the first of the month, were charged a "security deposit" (which is terminology generally used in a landlord-tenant relationship), and had been threatened with eviction for untimely payment. Accordingly, there are fact issues as to whether the Wrights complied with the terms of the oral agreement for sale.

After reviewing the summary judgment evidence in the light most favorable to Sadeghian, we conclude that genuine issues of material fact precluded the trial court's entry of summary judgment in the Wrights' favor. We sustain this point of error.

18

We reverse the trial court's judgment and remand the case for further proceedings consistent with this opinion.

Josh R. Morriss, III
Chief Justice

Date Submitted:     November 26, 2018
Date Decided:       January 18, 2019