## E. J. CHAUVIN & CO. v. J. F. McKNIGHT ET AL.

### Decided November 18, 1910.

**1.—Statute of Frauds—Default of Another—Secondary Liability.**

An oral agreement to pay the debt of another, when merely secondary and collateral to the liability of the party primarily bound, is a promise to answer for the default of another, and is within the second subdivision of our statute of frauds, and therefore not binding.

**2.—Same—Evidence.**

In an action by mechanics to recover of the owner of a building a debt due them by the contractor, by reason of an oral promise by the owner to see the debt paid, evidence considered and held to show merely a secondary or collateral undertaking, and therefore within the statute of frauds.

**3.—Venue—Non-liability of Resident Defendant.**

The failure of a plaintiff to establish a cause of action against a resident defendant restores to a non-resident co-defendant the privilege to be sued only in the county of his residence, and a proper and seasonable plea asserting such privilege should be sustained.

Appeal from the County Court of Orange County.    Tried below before Hon. S. W. Sholars, Jr.

*Geo. E. Holland* and *V. H. Stark,* for appellants.

No brief for appellees.

PLEASANTS, CHIEF JUSTICE.—Appellants, E. J. Chauvin and W. C. McGrory, composing the firm of E. J. Chauvin & Co., brought this suit against appellees, J. F. McKnight, a resident of Lavaca County, and Aaronson Bros., a firm composed of G. Aaronson and M. B. Aaronson, who reside in Orange County, to recover upon an alleged contract for labor performed by plaintiffs for defendants.    The petition alleges the cause of action sued on as follows:

"That heretofore, towit, about May 11, 1907, defendants, Aaronson Bros., were desirous of constructing a two-story brick building on their lot on Front Street, corner of Fourth Street, in the city of Orange,

Texas, and for that purpose had entered into some kind of an agreement with the defendant McKnight, the exact nature of which these plaintiffs do not know, but by the terms of which the defendant McKnight supervised and had control of the construction of said building, and obligated and bound himself to construct same.

"That it was desired by all of the defendants to have certain brick and other work done on said building. And they solicited plaintiffs to do said work for them, and the defendant McKnight asked of these plaintiffs to bid for said work. But plaintiffs not being acquainted with the financial standing of said McKnight and being acquainted with the defendants, Aaronson Bros., called upon said Aaronson Bros. and discussed the work with them. And at said time said Aaronson Bros., as an inducement and consideration for plaintiffs to agree and perform said work, contracted and agreed with plaintiffs that they would pay plaintiffs in full for all work performed by them on said building for or under the direction of the defendant McKnight. And relying upon said original agreement and promise the plaintiffs made to the defendant McKnight a written proposition by the terms of which they agreed to lay and unload brick for said building for the price of $6 per thousand, and do other services, all of which is shown by a copy of written proposition attached to original petition and marked Exhibit 'A' and here referred to and made a part of this petition, and which said proposition was made at the solicitation of the defendants and all of them jointly, and upon the express agreement and original promise that if plaintiff would perform the services therein stated for the defendants, both J. F. McKnight and Aaronson Bros. would pay said price for said services. And said proposition was accepted. And that by said contract defendants became jointly and severally liable to pay plaintiffs for all services rendered under said proposition, the price therein mentioned.

"And acting under said agreement and relying upon the promise of defendants and their obligation to pay for said services plaintiffs laid brick in said building as mentioned in said proposition to the amount of 169,272 for which they were to receive pay at the rate of $6 per thousand, amounting to the aggregate sum of $1015.63; and plaintiffs further, under the express direction of defendants and upon their agreement to pay a reasonable compensation for same, set eight plates for columns and nine lintels over windows, and said services were reasonably worth the sum of $1 per each plate and each lintel, and amounting to the sum of $17, making the total sum due plaintiffs by defendants $1032.63.

"That although plaintiffs performed said services in good faith and defendants received the value thereof and accepted same and promised and agreed to pay plaintiffs therefor the sum of money above mentioned, though often requested said defendants have failed and refused to pay plaintiffs said sum of money or any part thereof except the sum of $608.50, leaving a balance due plaintiffs of $424.13, which, although

often demanded, defendants have failed and refused to pay plaintiffs and still so fail and refuse to their great damage in the sum of $500."

The defendant McKnight filed a plea of privilege to be sued in the county of his residence, and, subject to said plea, filed an answer containing a general denial and a plea of reconvention against plaintiffs.

The defendants Aaronson Bros. filed answer containing general denial, and plea of the statute of frauds against plaintiffs' demand, on the ground that plaintiffs were seeking to hold them liable upon a verbal promise to pay the debt of another.

The trial judge, after hearing all of the evidence offered by plaintiffs, upon motion of defendants gave the jury the following instructions: "Gentlemen of the jury: You are instructed that in this cause plaintiffs having alleged in their petition that they were induced to enter into the contract herein sued upon by Aaronson Bros., and upon the original promise of said Aaronson Bros. to become liable under said contract, and there being no evidence to support said plea, you will return a verdict in favor of Aaronson Bros., and you will also find for defendant McKnight on his plea of privilege to be sued in the county of Lavaca."

A verdict was returned in accordance with these instructions and judgment rendered in conformity with said verdict.

The first assignment of error complains of the charge of the court on the ground that the evidence raised the issue of an original undertaking and promise on the part of defendants Aaronson Bros. to pay plaintiffs for the work performed by them.

Under this assignment appellant sets out in his brief portions of the testimony of each of the plaintiffs from which we copy the following:

"Mr. Banker was the architect and general supervisor of the work. I know this by his having supervision over the work. I talked to Mr. Aaronson about it. He said Mr. Banker had full authority of the affairs. Also we talked to him about our money. I talked to him about Mr. Banker's supervising the work and also about the money. I talked to Mr. Aaronson about it. Mr. Aaronson told me that I would get my money for the work. We had a front wall to be torn down there. Mr. McKnight and I went over the wall together and come over to Mr. Banker's office, and Mr. Thacker represented Mr. Banker as architect."

In answer to the question: "What did Aaronson tell you about Mr. Banker's connection with the building before the contract was made between you?" the witness answered: "It was perfectly satisfactory to them and they would see that we got our money. They told us that before and after. Mr. Aaronson said, 'I am glad you got that work, and you will proceed now.'"

This witness testified that he did the work on the building and was entitled to the compensation claimed therefor in his petition. He further testified: "I did not make any proposition to Mr. McKnight after Mr. Aaronson had promised to pay for the work. I did make Mr. McKnight a written proposition to do some work for him. I made him

that proposition on the faith of Mr. Aaronson's promise. My faith was in Mr. Aaronson. I never knew Mr. McKnight before I saw him here. I did not know and never knew exactly what connection he had with the building of that store. I never saw any contract. I simply know he was building the store and knew at that time Aaronson was owning the building, and went to them to be protected in my payment. I made Mr. McKnight this proposition in writing to do the work on the building. . . . We went to Mr. G. Aaronson twice during the progress of that work. It was during the time we were at work. He never denied that he had agreed to pay us. I would not have done that work but for this agreement. He said that they would see that we got our money. We entered into that contract on the faith that Aaronson Bros. agreed to pay us. Mr. McKnight drew the money and paid for the work. By the contract we were to receive so much for the work, and he was bound to pay for my services so far as he had Aaronson Bros.' work in control. He also agreed to pay me for the work. . . . Mr. Aaronson went to the bank and endorsed this check for me. It was on Saturday. The estimation was due and Mr. McKnight didn't pay it. I went to Mr. Aaronson and told him that Mr.. McKnight wasn't here and I needed money to pay, and he come down to the bank and endorsed with me. If I didn't get the money Mr. Aaronson would be responsible. It was the second payment. He endorsed a note. He did not deny his liability to me at that time, and had no other reason for endorsing my note or check. I had no other reason for asking him, not if it hadn't been his building."

McGrory testified: "We arranged with Mr. Aaronson about paying us for that work along when we were pretty well up with the building. Mr. McKnight didn't give us any money. The second estimate was due and he never paid in full when the first one was due. He cut us off $20. The total was $70. We had laid 51,000 brick when our first estimate was due. He cut us off $20 on the first estimate. Then we went to Mr. Aaronson to protect us on the contract."

Q.—"Would you have gone ahead in this contract and done the work you are suing for here if you hadn't talked to Mr. Aaronson?"

A.—"No, sir. Mr. Aaronson said no person working on the building would lose a dollar on it. We were delayed there over a front of the building. After that we did more work on the building. The work that we did on the building we did on the faith of Mr. Aaronson's agreement to pay for it. We would not have gone ahead under McKnight unless he had agreed. At that time Mr. Aaronson endorsed a note for Mr. Chauvin. He did not deny the fact that he owed us for the work at that time. There was no other reason that he should endorse the note. By his agreement with McKnight he paid the payments through McKnight, and McKnight wasn't here to make them through, and that is the reason he endorsed this note. Our work was accepted then by Aaronson Bros. and McKnight."

We think that from these statements of the witnesses it is clear that

the only agreement or promise of the defendant Aaronson to pay plaintiffs for their labor was the promise that the plaintiffs would "get their money for the work," and that said defendant "would see that plaintiffs got their money," and when the plaintiff Chauvin testified that he made his proposition to McKnight on "the faith of Mr. Aaronson's promise and that his faith was in Mr. Aaronson," he cannot be understood to mean anything more than that he acted on the faith of Aaronson's promise "to see that he got his money." This is just as clearly true of the testimony of the plaintiff McGrory, that the work they did on the building was done "on the faith of Mr. Aaronson's agreement to pay them for it," and that they would not have "gone ahead under McKnight unless he had agreed." This witness had previously stated that they had arranged with Mr. Aaronson about paying for the work when they were pretty well up with the building, and that after McKnight had failed to pay them the full amount of the second estimate they went to Mr. Aaronson "to protect them."

If Aaronson agreed to become primarily liable for plaintiffs' debt, plaintiffs would have testified directly to that effect and not left the fact of such agreement to inference or implication from their testimony. We think that reasonable minds cannot differ in the conclusion from the testimony above set out that the only agreement or promise made by Aaronson was that he would see that plaintiffs were paid by McKnight. This, however, is not a full statement of the testimony. Upon cross-examination plaintiff Chauvin testified:

"We made a contract with Mr. McKnight. It was a written contract. The first original contract was the original contract with Mr. McKnight. I had no written contract with Mr. Aaronson. I said, after we had done part of the work I went to Mr. Aaronson. Up to that time I had no contract with Mr. Aaronson at all. Mr. Aaronson told me he would see me paid. Mr. Aaronson is bound to be in the contract before that time, when we went to his representatives to find if it was agreeable for us to go into the contract with Mr. McKnight. That is the first time Mr. Aaronson told me anything at all, that he would see me paid. I went on to work again. Then when I got the work half done, I saw Mr. Aaronson again. And he again told me that he would see me paid. I was to look to Mr. Aaronson if Mr. McKnight didn't pay. Unless Mr. McKnight didn't pay Mr. Aaronson didn't owe me anything. In case Mr. McKnight didn't pay, then I looked to Mr. Aaronson. If Mr. McKnight didn't pay us he would pay us. Mr. Aaronson's statement was not in writing."

Plaintiff McGrory on cross-examination testified: "Mr. McKnight was not carrying out his contract. He had refused to carry out his contract. He had failed in his first estimate. I simply went to Mr. Aaronson to get him to stand good to me for Mr. McKnight's contract. If he had refused to stand good for that contract I would have stopped. I would not have gone to Mr. Aaronson until Mr. McKnight fell down. I had the right to protect myself. I had no particular right to go to

Aaronson unless McKnight didn't carry out his contract. The contract stated what Mr. McKnight was to do and what we were to do. We went on with that contract and laid 51,000 brick and then got uneasy and come to Mr. Aaronson to stand good for the brick."

This uncontradicted evidence conclusively negatives the idea that there was any intention on the part of Aaronson to become primarily liable for the amount of plaintiffs' earnings under their contract with McKnight, but by the unequivocal and positive testimony of the plaintiffs it is shown that Aaronson only agreed to become secondarily liable for their debt, and that this agreement was not in writing. The agreement of defendant Aaronson being secondary and collateral to the original liability of defendant McKnight, such agreement was within the second subdivision of our statute of frauds and can not sustain plaintiffs' suit because it was not in writing signed by said defendants. Art. 2543, Sayles' Civil Statutes; Loftus v. Ivy, 14 Texas Civ. App., 701 (37 S. W., 766); Muller v. Riviere, 59 Texas, 644.

If the defendant Aaronson had promised plaintiff absolutely and unconditionally to pay for their labor if they continued to work on the building, and plaintiffs in sole reliance upon this promise continued to perform their work in accordance with their contract with McKnight, such promise might not, under the circumstances of this case, have been within the statute of frauds; but the promise being only to pay in event McKnight failed to pay, is clearly a promise to answer for the default of another, and is within both the letter and spirit of the statute. The distinction between the two forms of promise above mentioned is clearly stated in the case of Muller v. Riviere, *supra*.

It being shown by the undisputed evidence that the defendants Aaronson Bros. are not liable to plaintiffs for the debt sued for, and plaintiffs being charged with knowledge of the legal effect of such evidence, it must be held that their joining said defendants in the suit against McKnight was a legal fraud upon the jurisdiction of the court over McKnight's person, and therefore his plea of privilege to be sued in the county of his residence should have been sustained, and the trial court did not err in so instructing the jury. Groos v. Brewster, 55 S. W., 592; Burkitt v. Wynne, recently decided by this court. 62 Texas Civ. App., 560.

This disposes of the second and only remaining assignment presented in appellant's brief.

The judgment of the court below is affirmed.

*Affirmed*