

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-14-00311-CV

Gerardo **LASCANO**,
Appellant

v.

**HUSER CONSTRUCTION COMPANY**,
Appellee

From the 198th Judicial District Court, Kerr County, Texas
Trial Court No. 12406B
Honorable M. Rex Emerson, Judge Presiding

Opinion by:    Rebeca C. Martinez, Justice

Sitting:        Karen Angelini, Justice
                 Marialyn Barnard, Justice
                 Rebeca C. Martinez, Justice

Delivered and Filed:  May 27, 2015

REVERSED AND REMANDED

Gerardo Lascano sued Huser Construction Company asserting claims for breach of contract, promissory estoppel, and quantum meruit based on work he performed on a project for which Huser was the general contractor and construction manager. Huser filed motions for traditional and no-evidence summary judgment asserting numerous grounds in each motion. The trial court granted both motions without stating the basis on which the motions were granted. Lascano appeals asserting he presented evidence raising genuine issues of material fact in response

to both motions. We reverse the trial court's judgment and remand the cause to the trial court for further proceedings.

## BACKGROUND

The Salvation Army contracted with Huser for the construction of a community center. As previously noted, Huser was both the general contractor and the construction manager for the project. The Salvation Army separately contracted with ACFS Security, LLC to install the fire and security systems for the project. Lascano was an employee of ACFS.

At the beginning of the project, Lascano's work was being supervised by two ACFS supervisors, Alfred Trevino and Pete Padilla, and ACFS was paying Lascano for the work he performed. During this time, Lascano would attend regular on-site meetings to discuss the project schedule. Marty Dressen, Huser's project manager, and Barry Fisher, Huser's project superintendent, were in charge of the schedule. Scott Rain, Huser's director of operations, was also present at the construction site at various times.

At some point during the project, Trevino and Padilla disappeared from the project. Lascano stated the disappearance occurred when he was in the middle of his part of the project. On September 27, 2010, Frank Dunlap, Salvation Army's director of operations and planning for the community center, sent an email to Dressen, Fisher, and Rain informing them that Trevino and Padilla were no longer with ACFS.

Around the same time Trevino and Padilla disappeared, Lascano told Fisher he was not going to continue working on the project because ACFS was not paying him. Lascano stated both Fisher and Rain told him to continue working and they "would make sure [he] got paid." Based on their promises, Lascano continued working and completed the project. A certificate of occupancy was issued for the community center on November 22, 2010.

When Huser subsequently failed to pay Lascano, he filed the underlying lawsuit, alleging breach of contract, promissory estoppel, and quantum meruit claims.[1]  As previously noted, the trial court granted summary judgment in favor of Huser.  Lascano timely appealed.

### STANDARD OF REVIEW

We review a trial court's decision to grant no evidence and traditional motions for summary judgment de novo.  *Valance Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005); *Strandberg v. Spectrum Office Bldg.*, 293 S.W.3d 736, 738 (Tex. App.—San Antonio 2009, no pet.).  "When reviewing a traditional or a no-evidence summary judgment, we accept the non-movant's evidence as true and 'indulge every reasonable inference and resolve any doubts in the non-movant's favor.'"  *Strandberg*, 203 S.W.3d at 738 (quoting *Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 157 (Tex. 2004)).  A traditional summary judgment may be granted when the summary judgment evidence shows "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law."  TEX. R. CIV. P. 166a(c).

A movant is entitled to a no-evidence summary judgment if, "[a]fter adequate time for discovery, ... there is no evidence of one or more essential elements of a claim or defense on which an adverse party would have the burden of proof at trial."  TEX. R. CIV. P. 166a(i). The trial court "must grant" the no-evidence motion unless the non-movant "produces summary judgment evidence raising a genuine issue of material fact" on the elements challenged by the movant.  *Id*. "A genuine issue of material fact exists if more than a scintilla of evidence establishing the existence of the challenged element is produced."  *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004).  "More than a scintilla of evidence exists when the evidence rises to a level that would enable reasonable and fair-minded people to differ in their conclusions."  *King Ranch, Inc.*

---

[1] Lascano sued both ACFS and Huser.  Lascano obtained a default judgment against ACFS.  ACFS is not a party to this appeal.

*v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003) (internal citations omitted). "Less than a scintilla of evidence exists when the evidence is so weak as to do no more than create a mere surmise or suspicion of a fact." *Id.*

## EXISTENCE OF A VALID CONTRACT

One of the elements of a breach of contract claim is the existence of a valid contract. *CCC Group, Inc. v. South Cent. Cement, Ltd.*, 450 S.W.3d 191, 196 (Tex. App.—Houston [1st Dist.] 2014, no pet.); *MacIntire v. Armed Forces Benefit Ass'n*, 27 S.W.3d 85, 88-89 (Tex. App.—San Antonio 2000, no pet.). Huser's no-evidence motion for summary judgment asserted no evidence existed of a contract between Huser and Lascano. In response, Lascano asserted evidence existed of a unilateral contract.

"[A] unilateral contract is created when a promisor promises a benefit if the promisee performs." *City of Houston v. Williams*, 353 S.W.3d 128, 135-36 (Tex. 2011). "A unilateral contract becomes enforceable when the promisee performs." *Id.* For example, "when an employer offered to share five percent of the proceeds of a sale or merger of the company with certain employees if they remained employed until the sale or merger, a unilateral contract was formed when the employees remained employed for the requisite time." *Id.*

In this case, Lascano produced his affidavit and his deposition testimony as summary judgment evidence. Lascano stated in his affidavit and testified in his deposition that Fisher and Rain promised they would make sure Lascano "got paid" if he continued working on the project, Because Lascano continued working until the project was completed, a unilateral contract was formed based on Fisher's and Rain's promises. Therefore, summary judgment was not proper on this ground.

## DAMAGES

In its no-evidence motion, Huser challenged the damages element of each of Lascano's claims. In response to Huser's motion, Lascano was not required to marshal evidence to prove his damages, but was only required to point out evidence that raised a fact issue regarding his damages. *See Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 207 (Tex. 2002); Tex. R. Civ. P. 166(a)(i) cmt.; *see also Community Initiatives, Inc. v. Chase Bank of Tex.*, 153 S.W.3d 270, 280 (Tex. App.—El Paso 2004, no pet.) (noting non-movant was not required to present all of its evidence in the order it would be presented at trial but only had to point out some evidence that raises a fact issue).

To recover damages on a breach of contract claim, Lascano was required to establish that he suffered some pecuniary loss as a result of the breach. *S. Elec. Servs., Inc. v. City of Houston*, 355 S.W.3d 319, 324 (Tex. App.—Houston [1st Dist.] 2011, pet. denied). Generally, the measure of damages for breach of contract is that which restores the injured party to the economic position he would have enjoyed if the contract had been performed. *Mood v. Kronos Products, Inc.,* 245 S.W.3d 8, 12 (Tex. App.—Dallas 2007, pet. denied); *Bowen v. Robinson*, 227 S.W.3d 86, 96 (Tex. App.—Houston [1st Dist.] 2006, pet. denied). Damages recoverable for promissory estoppel are the amount necessary to restore the party to the position the party would have been in had it not acted in reliance on the promise. *Fretz Const. Co. v. S. Nat'l Bank of Houston*, 626 S.W.2d 478, 483 (Tex. 1981); *G.D. Holdings, Inc. v. H.D.H. Land & Timber, L.P.*, 407 S.W.3d 856, 862 (Tex. App.—Tyler 2013, no pet.). The correct measure of damages to recover on quantum meruit is the reasonable value of the work performed and the materials furnished. *LTS Group, Inc. v. Woodcrest Capital, L.L.C.*, 222 S.W.3d 918, 920-21 (Tex. App.—Dallas 2007, no pet.).

In this case, Lascano produced records showing the number of hours he spent completing the project. Lascano also produced receipts for materials he purchased in order to complete the

project. In his affidavit, Lascano stated that ACFS was paying him $18.50 per hour. Lascano further stated that he was paid around $18 to $20 per hour for work installing alarm systems, and after completing the project, he worked another job installing alarms and was paid about $18.00 per hour.

We recognize the nature of the evidence that must be produced to defeat a no-evidence motion will vary based on the nature of the alleged damages. We also acknowledge that whether a party adequately points out evidence relating to the challenged elements of a claim can be "a close question." *Johnson*, 73 S.W.3d at 207. However, we hold Lascano's "response met the minimum requirements of Rule 166a(i)" because the records, receipts, and affidavit testimony he produced pointed out some evidence that raised a fact issue as to his damages. *Johnson*, 73 S.W.3d at 207-08; TEX. R. CIV. P. 166a(i) cmt. Accordingly, summary judgment was not proper on this ground.[2]

## VALUABLE SERVICES FOR HUSER

To recover on a claim for quantum meruit, a plaintiff must show (1) he rendered valuable services, (2) to the party sought to be charged, (3) which were accepted by the party sought to be charged, and (4) under circumstances as would reasonably notify the recipient that the plaintiff expected to be paid by the recipient. *Heldenfels Bros. Inc. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992); *Walker & Assocs. Surveying, Inc. v. Roberts*, 306 S.W.3d 839, 858 (Tex. App.—Texarkana 2010, no pet.). In its no-evidence motion, Huser contended no evidence existed

---

[2] In its brief, Huser cites *San Saba Energy, L.P. v. Crawford*, 171 S.W.3d 323, 331 (Tex. App.—Houston [14th Dist.] 2005, no pet.), to assert this court's job is not to sift through Lascano's evidence to calculate what Lascano is owed. First, as previously noted, Lascano was only required to point out evidence that raises a fact issue regarding his damages. He was not required to prove the exact amount he was owed. Second, in *San Saba Energy, L.P.*, the non-movants' response generally stated the summary judgment raised fact issues as to all elements of their claims and incorporated six hundred fifty pages of evidence by reference. *Id.* In this case, Lascano stated the amount he typically was paid for each hour worked, and attached 40 pages of time records as one exhibit to his affidavit and 17 pages of receipts as another exhibit. Accordingly, *San Saba Energy, L.P.* is clearly distinguishable from the instant case.

to show Lascano "provided valuable services for Huser." Similarly, in its traditional motion for summary judgment, Huser contended, "as a matter of law, [Lascano] cannot establish that the services or material he provided were provided for Huser." In this motion, Huser argues it was not the owner of the project and received absolutely no benefit or only an incidental benefit from Lascano's work. [3]

In his brief, Lascano asserts the facts in this case are similar to the facts in *Concept Gen. Contracting, Inc. v. Asbestos Maint. Servs., Inc.*, 346 S.W.3d 172 (Tex. App.—Amarillo 2011, pet. denied). In that case, BW Affordable Housing, L.P. contracted with Concept General Contracting, Inc. to renovate some apartment units. *Id*. at 178. As part of this project, Concept and Asbestos Maintenance Services, Inc. (AMS) entered into a subcontract for AMS to provide asbestos abatement for certain, specific areas. *Id*. During the course of the project, Concept requested additional work. *Id*. AMS gave Concept a quote for the additional work, and after the work was performed, Concept paid AMS for the additional work. *Id*. While AMS was still performing the work pursuant to the contracts, Concept's construction superintendent kept adding additional areas to the specified area. *Id*. Although Concept paid for some of the additional work, Concept stopped paying at a certain point in time, and AMS eventually stopped working. *Id*. AMS sued Concept to recover damages for the work performed and judgment was entered in favor of AMS. *Id*.

On appeal, Concept asserted it could not be liable for quantum meruit damages because it did not own the apartment units. *Id*. at 181-82. The Amarillo court first noted in order to recover quantum meruit damages, the plaintiff must show that its efforts were undertaken for the person sought to be charged. *Id*. at 182. The court also noted the evidence was clear that AMS contracted

---

[3] Huser's traditional motion also asserted that Lascano was required to show that Huser was "unjustly enriched" as an element of Lascano's quantum meruit claim; however, "unjust enrichment" is a separate theory from quantum meruit. *See Heldenfels Bros., Inc.*, 832 S.W.2d at 41; *Pepi Corp. v. Galliford*, 254 S.W.3d 457, 459-60 (Tex. App.—Houston [1st Dist.] 2007, pet. denied).

with Concept and never dealt with BW directly. *Id*. Finally, the court noted that all of the extra work was requested at the direction of Concept's construction superintendent. *Id*. Therefore, the court held that AMS performed the extra work for Concept, not BW. *Id*. The court also held that the work was performed for Concept's benefit because the evidence established that Concept needed AMS's abatement work to complete its general contract with BW. *Id*.; *see also RC Mgmt., Inc. v. Tex. Waste Sys., Inc.*, No. 04-02-00488-CV, 2003 WL 1712535, at *3-4 (Tex. App.—San Antonio Apr. 2, 2003, no pet.) (holding evidence supported quantum meruit claim where appellant contractor promised payment and needed services provided by appellee to fulfill its contractual obligations to owner) (mem. op.).

Huser argues the *Concept* case is distinguishable from the present case because Huser did not contract with ACFS. We disagree that this distinction makes the Amarillo court's holding inapplicable to the instant case.

Although ACFS initially contracted with Salvation Army to perform the installation services, ACFS's performance under that contract ended when it stopped paying Lascano to perform its work. At that time, Lascano informed Fisher that he would no longer perform the installation work. Both Rain and Dressen admit in their depositions that they then asked Lascano to remain on the job to complete the work. Dressen stated she told Lascano she needed him to stay, and Rain and Fisher promised they would make sure Lascano "got paid." Therefore, as previously noted, a unilateral contract existed based on Rain's and Fisher's promise. Accordingly, like the facts in *Concept*, a contract did exist between Lascano and Huser.

With regard to whether Huser benefitted from Lascano's services, Rain, Dressen, and Fisher all testified about the scheduling sequence necessary for Huser to complete its contract, and delays in the alarm and security installation would have adversely impacted the schedule. In addition, the fire alarm was required to be completely installed and tested before Huser could

- 8 -

obtain the certificate of occupancy for the community center that Huser was required to deliver under its contract. Finally, both Rain and Dressen testified that Huser benefitted from Lascano's work which enabled Huser to achieve substantial completion and obtain the certificate of occupancy. Accordingly, we hold the evidence established a genuine issue of material fact as to whether Lascano provided valuable services to Huser for its benefit, and summary judgment was improper as to Lascano's quantum meruit claim.

### STATUTE OF FRAUDS

In its traditional motion, Huser asserted Lascano's breach of contract and promissory estoppel claims were barred by the statute of frauds because the claims were based on Huser's promise to answer for ACFS's debt. *See* TEX. BUS. & COM. CODE ANN. § 26.01(b)(2) (West 2015) (promise to answer for debt of another person is not enforceable unless promise is in writing). Lascano responded that the statute of frauds was not applicable to its promissory estoppel claim, and with regard to its breach of contract claim, Lascano responded Huser's promise is enforceable under the "main purpose" exception to the statute of frauds.

"Although promissory estoppel is normally a defensive theory, it may nonetheless be asserted by a plaintiff as an affirmative ground for relief." *Medistar Corp. v. Schmidt*, 267 S.W.3d 150, 163 (Tex. App.—San Antonio 2008, pet. denied). The statute of frauds "is not a defense to an action for affirmative relief under the doctrine of promissory estoppel." *Id*. Accordingly, summary judgment would not be proper on this ground.

"Whether a contract comes within the statute of frauds is a question of law," which is reviewed de novo. *Dynegy, Inc. v. Yates*, 422 S.W.3d 638, 642 (Tex. 2013). Under the "main purpose" exception to the statute of frauds, a promise to pay the debt of another is not barred by the statute of frauds if the promisor assumed primary responsibility for the debt and his leading objective is to serve some interest or purpose of his own. *Cruz v. Andrews Restoration, Inc.*, 364

S.W.3d 817, 827 (Tex. 2012) (quoting *Lemmon v. Box*, 20 Tex. 329, 333 (1857)); *Haas Drilling Co. v. First Nat'l Bank in Dallas*, 456 S.W.2d 886, 891 (Tex. 1970). "The main purpose doctrine requires that: (1) the promisor intended to create primary responsibility in itself to pay the debt; (2) there was consideration for the promise; and (3) the consideration given for the promise was primarily for the promisor's own use and benefit—that is, the benefit it received was the promisor's main purpose for making the promise." *Cruz*, 364 S.W.3d at 828.

"Unless reasonable minds could not differ as to the intent to be a surety or not, the precise words or form used are not controlling." *Gulf Liquid Fertilizer Co. v. Titus*, 354 S.W.2d 378, 384 (Tex. 1962). "If the words used are not clear and are susceptible of more than one meaning, the question of intent to be primarily responsible for another's debt is one for the finder of fact, taking into account all the facts and circumstances of the case including the words used by the promisor." *Id*.

In *Gulf Liquid Fertilizer Co.*, the Texas Supreme Court stated that a promise "to see that the debt was paid" were words "subject to several interpretations as to intent." *Id*. Accordingly, the court deferred to the trial court's interpretation as the trier of fact that those words coupled with some evidence that the promisor also agreed to pay the debt was a promise to accept primary responsibility. *Id*. at 384-85. Similarly, in this case, we hold the promise "to make sure [Lascano] got paid" is "subject to several interpretations as to intent." *Id*. at 384. Accordingly, a genuine issue of material fact exists as to the applicability of the main purpose doctrine, and summary judgment would not be proper on statute of frauds grounds.[4]

---

[4] Huser relies heavily in its brief on a 1910 opinion styled *E.J. Chauvin & Co v. McKnight*, 63 Tex. Civ. App. 35, 132 S.W. 383 (Tex. Civ. App. 1910). In that case, the plaintiffs sought to hold Aaronson Bros. responsible for paying for the work the plaintiffs performed under a construction contract they entered into with J.F. McKnight. 132 S.W. at 384. One of the plaintiffs testified when the work was "half done I saw Mr. Aaronson again. And he again told me that he would see me paid. I was to look to Mr. Aaronson if Mr. McKnight didn't pay. Unless Mr. McKnight didn't pay, Mr. Aaronson didn't owe me anything. In case Mr. McKnight didn't pay, then I looked to Mr. Aaronson. If Mr. McKnight didn't pay us, he would pay us." *Id*. at 386. The other plaintiff testified, "I had no particular right to go to

## ENFORCEABILITY OF PROMISE AND ORAL AGREEMENT

Huser's traditional motion for summary judgment asserted Lascano's alleged oral agreement failed because no agreement was reached regarding the amount Lascano would be paid. Huser's motion similarly asserted the promise to "make sure [Lascano] got paid" was not sufficiently certain to be enforceable. Based on these assertions, Huser contended Lascano was not entitled to recover on his breach of contract and promissory estoppel claims as a matter of law.

In its brief, Huser asserts any oral agreement between Huser and Lascano would be an employment agreement, and compensation typically is an essential term of an employment agreement. *See City of Houston*, 353 S.W.3d at 138-39 ("In the context of employment agreements, typical essential terms include, among other, compensation, duties or responsibilities."). Huser further asserts Lascano cannot inform the court what Huser allegedly agreed to pay Lascano or any other terms of the alleged promise. Lascano responds that the agreement was one for services, not an employment agreement, and contends the law favors holding agreements to be sufficiently definite when the services have been fully performed.

A.      Enforceability of Contract

"[W]hether an agreement fails for indefiniteness is a question of law to be determined by the court." *America's Favorite Chicken Co. v. Samaras*, 929 S.W.2d 617, 622 (Tex. App.—San Antonio 1996, writ denied). As previously noted, we review questions of law de novo. *Dynegy, Inc.*, 422 S.W.3d at 642.

"[T]o be enforceable, a contract must be sufficiently certain to enable the court to determine the legal obligations of the parties." *Bendalin v. Delgado*, 406 S.W.2d 897, 899 (Tex. 1966). "It has often been said, moreover, that a contract which does not fix the price or consideration or

---

Aaronson unless McKnight didn't carry out his contract." The foregoing testimony makes the facts in the cited case clearly distinguishable from the instant case.

provide an adequate way in which it can be fixed is too incomplete to be specifically enforceable." *Id.* The Texas Supreme Court noted, however, that this rule appeared to arise in actions for specific performance of contracts for the sale of land, and the requirement that a price be fixed arose, in part, from concerns for the statute of frauds. *Id.* The court then concluded, "Where the parties have done everything necessary to make a binding agreement for the sale of goods or services, their failure to specify the price does not leave the contract so incomplete that it cannot be enforced. In such a case it will be presumed that a reasonable price was intended." *Id.* at 900.

In discussing when courts should be willing to presume a reasonable price was intended, this court stated, "The law favors finding agreements sufficiently definite for enforcement" particularly where one party "has already provided the services for which the compensation was to be paid." *America's Favorite Chicken Co.*, 929 S.W.2d at 623-24. In this case, Rain and Dressen admit that they requested Lascano to remain on the job, and he fully performed all of the services necessary for Huser to obtain a certificate of occupancy as required by its contract. Moreover, "there is a certain basis for determining the remedy" since the action is one for damages and Lascano's damages can be calculated based on the number of hours he worked in completing the project. *Id.* at 623 ("Where the evidence shows that the parties intended to enter into an agreement, the courts should find the contract to be definite enough to grant a remedy provided that there is a certain basis for determining the remedy."). Therefore, we hold the unilateral contract between Huser and Lascano was sufficiently definite to be enforceable, and summary judgment was improper as to Lascano's breach of contract claim.

B.     Promise Sufficiently Specific

To support a finding of promissory estoppel, the asserted 'promise' must be sufficiently specific and definite that it would be reasonable for the promisee to rely upon it as a commitment to future action. *Corpus Christi Day Cruise, LLC v. Christus Spohn Health Sys. Corp.*, 398 S.W.3d

303, 311 (Tex. App.—Corpus Christi 2012, pet. denied); *Comiskey v. FH Partners, LLC*, 373 S.W.3d 620, 635 (Tex. App.—Houston [14th Dist.] 2012, pet. denied). In this case, Lascano testified that Huser promised it would make sure Lascano "got paid" if he kept working. Because Huser raised this issue in its traditional motion for summary judgment, Huser was required to conclusively establish that it would not be reasonable for Lascano to rely on Huser's promise as a commitment to making sure Lascano "got paid" for the work he continued to perform. Having reviewed the summary judgment evidence presented, we hold Huser failed to establish as a matter of law that its promise was not sufficiently specific and definite. Accordingly, summary judgment was improper as to Lascano's promissory estoppel claim.

## CONCLUSION

Because the granting of the summary judgment was not proper on any of the asserted grounds as to any of Lascano's causes of action, the trial court's judgment is reversed, and the cause is remanded to the trial court for further proceedings.

Rebeca C. Martinez, Justice