

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————————

No. 02-21-00162-CV

———————————————————

KEANA PRESCOD AND SHELLEY HARTE, Appellants

V.

SUZANNAH TKACH, Appellee

On Appeal from the 393rd District Court
Denton County, Texas
Trial Court No. 18-10539-393

Before Kerr, Birdwell, and Womack, JJ.
Memorandum Opinion by Justice Birdwell

## MEMORANDUM OPINION

Appellants Keana Prescod and Shelley Harte belatedly served their suit on Appellee Suzannah Tkach, which led the trial court to render summary judgment on the ground of the statute of limitations. Appellants challenge the summary judgment on three fronts.

First, Appellants contend that they were diligent in attempting to serve Tkach. We hold that the multiple unexplained gaps in the timeline of Appellants' attempts at service show a lack of diligence as a matter of law.

Second, Appellants assert that the trial court abused its discretion by declining to extend limitations under the authority granted by the Texas Supreme Court's emergency orders concerning the COVID-19 pandemic. But by the time of the first reported case of COVID in Texas, the period of limitations had long since passed, and Appellants had already thoroughly demonstrated a lack of diligence in pursuing service. We hold that the trial court did not abuse its discretion by declining to extend limitations.

Third, Appellants submit that the trial court could not rightly grant summary judgment on the basis of Tkach's limitations defense because she did not timely disclose that defense in response to requests for disclosure. We hold that Tkach did not forfeit the defense by failing to disclose it in discovery.

Hence, we affirm.

# I.    BACKGROUND

On November 23, 2016, Appellants were involved in a collision with Tkach. Appellants filed suit on November 9, 2018, just shy of the two-year statute of limitations.

Over the next 626 days, Appellants periodically attempted to obtain service of process using two servers. Service was at last achieved through Facebook on July 27, 2020.

On November 13, 2020, Tkach filed an amended answer in which she pleaded the statute of limitations as a defense. On the same day, Tkach moved for summary judgment on limitations grounds. Tkach argued that because Appellants did not exercise diligence in achieving service after limitations had expired, the suit should be disposed as a matter of law.

Appellants filed a response with evidence outlining their efforts at diligent service through Appellants' counsel Donald Mackenzie and Paul Cross:

- On November 13, 2018, citation issued for Tkach's last known address on Countryside Lane in Carrollton.

- Six weeks later, on December 27, 2018, Cross instructed his process server Texas State Service (TSS) to pick up the citation.

- On January 11, 2019, TSS reported that the Countryside address was not Tkach's residence. Mackenzie searched for Tkach on TLO, which is a personal records database, but he found no new information about her address.

- Nearly two months later, on March 6, 2019, Cross inquired with TSS about its efforts at service, and TSS replied that it had unsuccessfully attempted service that day.

- On March 20, 2019, Cross hired Professional Civil Process (PCP) to obtain service.

- On March 22, 2019, TSS reported that it had attempted service several times in March, and though the lights were on at the house, there was no answer at the door, and the vehicles at the house were registered to people other than Tkach.

- On March 25, 2019, Mackenzie used TLO to research the license plates of the vehicles at the Countryside address. He found that none of them belonged to Tkach. Also, Mackenzie ran a report through another search service called Accurint, but he found no new information on Tkach.

- In April 2019, Mackenzie told the process server to ask neighbors whether Tkach still lived at the Countryside address. The neighbors confirmed that she did.

- During this time, Mackenzie performed searches on TLO, Google, and Facebook "every week," but he found nothing.

- In May 2019, Mackenzie instructed his staff to seek substitute service, but he decided against substitute service when he found a link on Google indicating that Tkach was a student at Baylor University.

- Over the next six months, Mackenzie conducted weekly searches on TLO, Google, and Facebook. At some point he also contacted a process server in Waco, who informed Mackenzie that Tkach had an address at a student government building at Baylor, but that this address was not an acceptable address for service, and that he was not willing to attempt service for fear of Baylor police citing him for trespass.

- On October 4, 2019, Cross obtained a new citation.

- In October 2019, Mackenzie found on TLO that Tkach still lived at the Countryside address. Mackenzie and Cross arranged for PCP to make multiple service attempts on October 12, 22, and 29, and on November 11. All the attempts were unsuccessful.

- In November 2019, Cross informed Mackenzie that a Facebook search had confirmed that Tkach was a Baylor student.

- On November 12, 2019, Cross requested another round of attempts at service from PCP.

- On December 9, 2019, PCP reported to counsel that it had been unable to serve Tkach at the Countryside address.

- On December 16, 2019, Mackenzie instructed Cross to have PCP attempt service at the Countryside address over the Christmas holiday, when Tkach would likely be there.

- On December 21, 2019, PCP attempted service, but construction workers informed PCP that the Tkach family no longer lived there and that the house was vacant.

- Over the next three months, Mackenzie continued to search TLO, Google, Facebook, and county court records for information on Tkach.

- In March 2020, the COVID pandemic led PCP to suspend its efforts at service.

- In either May or June 2020, Cross informed Mackenzie of a new law allowing service of process through social media.

- On July 27, 2020, counsel accomplished service through Facebook.

Based on this evidence, the trial court granted summary judgment on limitations grounds.

## II.    STANDARD OF REVIEW

We review a summary judgment de novo. *Travelers Ins. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010). We consider the evidence presented in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could, and disregarding evidence contrary to the nonmovant unless reasonable jurors could not. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848

6

(Tex. 2009). We indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *20801, Inc. v. Parker*, 249 S.W.3d 392, 399 (Tex. 2008). A defendant is entitled to summary judgment on an affirmative defense if the defendant conclusively proves all elements of that defense. *Frost Nat'l Bank v. Fernandez*, 315 S.W.3d 494, 508–09 (Tex. 2010); *see* Tex. R. Civ. P. 166a(b), (c). To accomplish this, the defendant must present summary judgment evidence that conclusively establishes each element of the affirmative defense. *See Chau v. Riddle*, 254 S.W.3d 453, 455 (Tex. 2008).

A trial court abuses its discretion when its ruling is arbitrary and unreasonable, made without regard for guiding legal principles or supporting evidence. *In re State Farm Mut. Auto. Ins. Co.*, 629 S.W.3d 866, 872 (Tex. 2021) (orig. proceeding).

### III.  LACK OF DILIGENCE IN OBTAINING SERVICE

In their first, fourth, and sixth issues, Appellants challenge the trial court's conclusion that they were not diligent in obtaining service of process. Appellants contend that the record reflects their persistence in attempting service over the twenty months between the filing of suit and the date that service was achieved.

"A suit for personal injuries must be brought within two years from the time the cause of action accrues." *Proulx v. Wells*, 235 S.W.3d 213, 215 (Tex. 2007) (citing Tex. Civ. Prac. & Rem. Code Ann. § 16.003(a)). "But a timely filed suit will not interrupt the running of limitations unless the plaintiff exercises due diligence in the issuance and service of citation." *Id.* "If service is diligently effected after limitations has expired, the date of service will relate back to the date of filing." *Id.*

7

"In a summary judgment proceeding, once the defendant proves that service occurred after limitations expired, the burden shifts to the plaintiff to explain the delay and to raise a fact question regarding diligence of service." *Flanigan v. Nekkalapu*, 613 S.W.3d 361, 364 (Tex. App.—Fort Worth 2020, no pet.). To raise a fact issue on diligence, the plaintiff must present evidence regarding the efforts that were made to serve the defendant and explain every lapse in effort or period of delay. *Ashley v. Hawkins*, 293 S.W.3d 175, 179 (Tex. 2009) (quoting *Proulx*, 235 S.W.3d at 216). Generally, the question of the plaintiff's diligence in effecting service is one of fact, though it may be determined as a question of law "when one or more lapses between service efforts are unexplained or patently unreasonable." *Proulx*, 235 S.W.3d at 216. If the plaintiff's explanation raises a fact issue concerning diligence, the burden shifts back to the defendant to show why, as a matter of law, the explanation is insufficient. *Id.*

In assessing diligence, the relevant inquiry is whether the plaintiff acted as an ordinarily prudent person would have acted under the same or similar circumstances. *Id.* The duty to use diligence continues from the date the suit is filed until the date the defendant is served. *Flanigan*, 613 S.W.3d at 365. Diligence is generally determined by examining the time it took to secure citation, service, or both, and the type of effort expended or lack of effort in procuring service. *Proulx*, 235 S.W.3d at 216. We must consider the overall effort expended and whether the search ceased to be reasonable, especially when other methods of service were available. *Ashley*, 293 S.W.3d at 181.

8

Tkach pleaded the affirmative defense of limitations and submitted evidence that Appellants did not accomplish service until twenty months after the limitations period had expired. The burden thus shifted to Appellants to demonstrate diligence as to every period of delay in procuring citation and effecting service. *See Proulx*, 235 S.W.3d at 216.

In this case, there were four periods of substantial delay that warranted explanations. The first was a forty-eight-day gap between the request for issuance of citation on November 9, 2018, and the date that Appellants' counsel instructed his original process server TSS to retrieve the citation on December 27, 2018. Appellants offer no explanation for this gap. In *Flanigan*, we criticized the plaintiff for waiting nine days to put the citation in the process server's hands without any explanation for the delay. *See* 613 S.W.3d at 366. The law's patience is necessarily thinner for the same type of delay but that lasted five times longer, also without explanation.

The second period of substantial delay stretched from January 11, 2019, when counsel touched base with the process server and ran internet searches on Tkach, through March 6, 2019, when Cross contacted TSS and learned that it had attempted service apparently for the first time on that day. Appellants offer no defense for their inaction during this fifty-four-day span. *See Deloney v. Koscelnik*, No. 02-19-00433-CV, 2020 WL 7252316, at *5 (Tex. App.—Fort Worth Dec. 10, 2020, no pet.) (mem. op.) (concluding that party failed to raise a fact issue on diligence in light of an unexplained two-month delay).

We discuss the third and fourth periods of delay together because Appellants offer the same justification for both periods. In the third period, service efforts were deferred for six months in the middle of 2019. Mackenzie's affidavit stated that in April 2019, he asked his process servers to verify with neighbors that Tkach still lived at the Countryside address, and they confirmed that she did. The next reported activity was in October 2019, when Cross obtained a new citation and arranged for PCP to again attempt service at the Countryside address.

A fourth period of delay is the lull between PCP's last attempt at service on December 21, 2019, and the process server's suspension of work due to the onset of the COVID pandemic in March 2020, at which point the lack of further diligence might be temporarily excused. Appellants were required to explain what steps they took to obtain service in the intervening three months. *See Son Tran v. Trejos*, No. 14-17-00998-CV, 2019 WL 962605, at *4 (Tex. App.—Houston [14th Dist.] Feb. 28, 2019, no pet.) (mem. op.) (excusing a party's temporary lack of diligence after a hurricane made service impracticable, but still affirming summary judgment on limitations grounds because of unexplained lapses in effort prior to the hurricane).

Appellants attempt to bridge both of these gaps with testimony concerning their internet searches for Tkach. Counsel testified that during these third and fourth periods, they regularly consulted Facebook, Google, and one web service used to locate people in an effort to track her down. But in *Ashley*, the supreme court held that where counsel spent hours over an eight-month period poring over public records and a

variety of different websites designed to help locate people, this still did not create a fact issue as to diligence during that time. *See* 293 S.W.3d at 180–81. Thus, Appellants' efforts during these third and fourth periods of delay are in the same vein as, and of lower quality than, the efforts that the court found inadequate in *Ashley*.[1]

We hold that these four periods of delay—one of six weeks, another of over six weeks, yet another of six months, and the last of three months, none of them adequately explained—together show Appellants' lack of diligence as a matter of law. *See Erven v. Springer*, No. 02-16-00350-CV, 2017 WL 2471096, at *4 (Tex. App.—Fort Worth June 8, 2017, no pet.) (mem. op.) (concluding that unexplained gaps of six weeks, three months, and three months, taken together, showed lack of diligence as a matter of law). We overrule Appellants' first, fourth, and sixth issues.[2]

## IV. THE TRIAL COURT DID NOT ABUSE ITS DISCRETION BY DECLINING TO EXTEND LIMITATIONS

In their third issue, Appellants contend that the trial court abused its discretion by refusing to extend limitations for their claims. Appellants contend that the trial court

---

[1]Appellants' third period of delay is perhaps made more inexplicable by the fact that, once neighbors confirmed that Tkach still lived at the Countryside address, Appellants' counsel nonetheless decided against pursuing substitute service. *See, e.g.*, *Wilson v. Dunn*, 800 S.W.2d 833, 836 (Tex. 1990).

[2]Briefly, in their second issue, Appellants note that the social-media method of service through which they served Tkach was not available until 2020. *See* Tex. Civ. Prac. & Rem. Code Ann. § 17.033; Tex. R. Civ. P. 106(b)(2); *De La Garza v. Dunn*, No. 03-19-00849-CV, 2021 WL 1202089, at *5 n.7 (Tex. App.—Austin Mar. 31, 2021, no pet.) (mem. op.). We do not see how this fact tends to mitigate or explain the delay that we have addressed above. We summarily overrule Appellants' second issue.

11

had authority to extend limitations under the Texas Supreme Court's emergency orders concerning the COVID pandemic. According to Appellants, the trial court abused its discretion by declining to invoke that authority to save Appellants' claims from a limitations bar in light of the difficulties that the COVID pandemic posed for service.

The emergency order in effect at the time of the summary judgment was the supreme court's thirty-sixth order. *See Thirty-Sixth Emergency Order Regarding COVID-19 State of Disaster*, 629 S.W.3d 897, 897 (Tex. 2021). The order provided that in most civil cases, the trial court "may," and in some instances "must," modify or suspend any and all statutory deadlines:

> 3. Subject only to constitutional limitations, all courts in Texas *may* in any case, civil or criminal—and *must to avoid risk to court staff, parties, attorneys, jurors, and the public*—without a participant's consent:
>
> > a. except as provided in paragraph (b), *modify or suspend any and all deadlines* and procedures, whether prescribed by statute, rule, or order, for a stated period ending no later than June 1, 2021 . . . .

*Id.* (emphasis added). To construe this order, we interpret it according to its plain terms, giving the words used their ordinary meaning unless a different meaning is apparent from the context or the plain meaning leads to absurd results. *W. Harwood 334B Land Tr. v. Clement*, No. 02-20-00216-CV, 2021 WL 1229973, at *4–5 (Tex. App.—Fort Worth Apr. 1, 2021, no pet.) (mem. op.).

In this case, limitations had already passed by the time that Appellants requested an extension. The emergency orders do not give courts authority to revive jurisdiction once a *jurisdictional* deadline has passed. *See Choudry v. Choudry*, No. 01-20-00698-CV,

12

2021 WL 3556660, at *1 (Tex. App.—Houston [1st Dist.] Aug. 12, 2021, no pet.) (per curiam) (mem. op.) (dealing with jurisdictional deadline to appeal); *In re J.R.*, 622 S.W.3d 602, 606 (Tex. App.—Fort Worth 2021, orig. proceeding) (dealing with jurisdictional deadlines for parental termination proceedings), *subsequent mandamus dismissed*, No. 21-0388 (July 2, 2021); *Quariab v. El Khalili*, No. 05-20-00979-CV, 2021 WL 960646, at *1 (Tex. App.—Dallas Mar. 15, 2021, no pet.) (mem. op.) (holding that the language of the emergency orders "does not suggest that a court can create jurisdiction for itself where the jurisdiction would otherwise be absent"). These cases deal with jurisdictional deadlines, though, and "generally a statute of limitations provides an affirmative defense, not a jurisdictional hurdle." *In re J.H.*, No. 02-20-00366-CV, 2021 WL 733083, at *2 (Tex. App.—Fort Worth Feb. 25, 2021, orig. proceeding) (mem. op.). We have found no authority concerning whether the emergency orders permit the retroactive extension of the statute of limitations, and we express no opinion on that issue.

Regardless, assuming without deciding that the trial court had the power to modify or suspend limitations as a deadline prescribed by statute, *see Satterthwaite v. First Bank*, No. 02-20-00182-CV, 2020 WL 4359400, at *1 n.1 (Tex. App.—Fort Worth July 30, 2020, no pet.) (mem. op.), the trial court also had discretion to decline to do so. *See Thirty-Sixth Emergency Order*, 629 S.W.3d at 897. The starting point for this provision is that the trial court "may" modify or suspend any deadline. In general, "may" is a permissive term that gives rise to discretionary authority or grants permission or a

13

power. *See* Tex. Gov't Code Ann. § 311.016(1); *Skeels v. Suder*, No. 02-18-00112-CV, 2021 WL 4785782, at *8 (Tex. App.—Fort Worth Oct. 14, 2021, no pet. h.) (mem. op. on reh'g). Consistent with the use of this permissive term, Texas courts have interpreted the emergency orders as generally permitting trial courts to extend deadlines rather than requiring them to do so. *See Kim v. Ramos*, 632 S.W.3d 258, 270 (Tex. App.—Houston [1st Dist.] 2021, no pet.) (collecting cases). That is, by and large, the order vests trial courts with "broad discretion to modify or suspend 'any deadlines and procedures' prescribed by statute." *Id.*

That discretion gives way to only a few restrictions stated in the order, but none apply here. One restriction is that the trial court's overall authority is "[s]ubject only to constitutional limitations," but Appellants have not suggested that there was some constitutional imperative that should have compelled the trial court to extend the statute of limitations. *Thirty-Sixth Emergency Order*, 629 S.W.3d at 897. Another apparent restriction on discretion is that the trial court "must" extend a deadline if necessary in order to avoid "risk" to those involved in the judicial process. *Id.* "Must" is a mandatory term. *AC Interests, L.P. v. Tex. Comm'n on Env't Quality*, 543 S.W.3d 703, 709 (Tex. 2018). However, Appellants have not identified what health risks might have been avoided by the retroactive extension of a statute of limitations that passed in November 2018, over a year before the first reported Texas case of COVID-19 in March 2020. *See In re State*, 602 S.W.3d 549, 550 (Tex. 2020) (orig. proceeding). By the time there was any danger to avoid, Appellants had already had nearly fifteen months

to achieve service or at least demonstrate their diligence in attempting to do so. This they failed to do.

Assuming that the trial court had authority to modify the limitations deadline, the trial court did not abuse its considerable discretion by declining to suspend the statute of limitations on account of a danger that did not yet exist during the fifteen months that Appellants slept on their responsibilities. We overrule Appellants' third issue.

## V. DISCLOSURE IN DISCOVERY

In their fifth issue, Appellants maintain that the trial court could not fairly dispose of the case on limitations grounds because Tkach failed to disclose this defense in discovery. As Appellants note, they served requests for disclosure along with their original petition in which they asked Tkach to disclose her legal theories and defenses. In her initial responses, Tkach did not list limitations as a defense, and Tkach did not supplement her disclosures to mention limitations before the discovery deadline of December 21, 2020. In the trial court, Appellants objected to the use of this defense, but the trial court overruled the objection and granted summary judgment. To this ruling, Appellants now assign error. Appellants submit that under Rule 193.6, Tkach should not have been permitted to prevail on this undisclosed defense, especially in the absence of any evidence that there was good cause for the nondisclosure or that the nondisclosure would not unfairly surprise Appellants.

15

Tkach counters that Rule 193.6 is best employed to exclude evidence, not entire legal defenses. According to Tkach, Rule 193.6 has limited applicability here because Appellants did not seek to exclude any evidence in the trial court. Rather, they sought to permanently preclude Tkach from ever prevailing on the defense of limitations.

Under former Rule 194.2, which governs this case, a party could request disclosure of "the legal theories and, in general, the factual bases of the responding party's claims or defenses." Former Tex. R. Civ. P. 194.2(c) (2020); *see* Order, Misc. Docket No. 20-9153 (Tex. Dec. 23, 2020). A party who fails to timely make a disclosure response may not introduce in evidence the material or information that was not timely disclosed unless the court finds that (1) there was good cause for the failure to timely disclose or (2) the failure to timely disclose will not unfairly surprise or unfairly prejudice the other party. Tex. R. Civ. P. 193.6(a). The party seeking to admit the evidence bears the burden to establish good cause or lack of unfair surprise. *Estate of Luce*, No. 02-17-00097-CV, 2018 WL 5993577, at *10 (Tex. App.—Fort Worth Nov. 15, 2018, no pet.) (mem. op.).

When answering a request for disclosure, "the responding party need not marshal all evidence that may be offered at trial." Former Tex. R. Civ. P. 194.2(c). The discovery rules are intended to require disclosure only of a party's basic assertions, not necessarily all aspects of the party's claims or defenses. *In re J.N.*, No. 02-17-00179-CV, 2017 WL 3910910, at *3 (Tex. App.—Fort Worth Sept. 7, 2017, no pet.) (mem. op.);

16

*see Robinson v. Lubbering*, No. 03-09-00655-CV, 2011 WL 749197, at *5 (Tex. App.—Austin Mar. 2, 2011, no pet.) (mem. op.) (quoting Tex. R. Civ. P. 194.6 cmt. 2).

Appellants contend that because Tkach failed to timely disclose her limitations defense in discovery, Tkach should not be able to prevail on this theory. However, Rule 193.6 is generally geared towards the exclusion of evidence, not entire legal theories. "Although it might be possible that untimely supplemented or amended discovery responses could cause surprise concerning the issues in a case, rule 193.6(a) relates to the discovery of *evidence . . . .*" *Lopez v. La Madeleine of Tex., Inc.*, 200 S.W.3d 854, 862 (Tex. App.—Dallas 2006, no pet.). "[I]ts principal purpose—and most common application—is to protect a party from surprise concerning the existence of undisclosed evidence—not issues." *Id.* Thus, we have held that "properly pled claims for affirmative relief, as opposed to withheld evidence, are not abandoned or waived by a party's failure to expressly identify those claims in a response to a request for disclosure." *J.N.*, 2017 WL 3910910, at *3 (quoting *Concept Gen. Contracting, Inc. v. Asbestos Maint. Servs.*, 346 S.W.3d 172, 180 (Tex. App.—Amarillo 2011, pet. denied)); *accord Bundren v. Holly Oaks Townhomes Ass'n, Inc.*, 347 S.W.3d 421, 431 (Tex. App.—Dallas 2011, pet. denied). "[T]here is nothing in the case law linking a failure to respond to discovery to an abandonment of a claim[.]" *Bundren*, 347 S.W.3d at 431 (quoting *Killam Ranch Props., Ltd. v. Webb Cnty.*, No. 04-08-00105-CV, 2008 WL 4958452, at *2 (Tex. App.—San Antonio Nov. 19, 2008, no pet.) (mem. op.)).

17

Rather, notice that a party is pursuing a particular legal theory "generally must come from the pleadings." *Concept Gen. Contracting*, 346 S.W.3d at 179. Appellants are complaining that they lacked notice of Tkach's limitations defense, but they received notice of Tkach's theory from her amended answer and the motion for summary judgment. *See id.* In her amended answer, Tkach thoroughly explained her defensive theory:

> **Statute of Limitations**. For further answer, and by way of affirmative defense, Defendant Suzannah Tkach asserts that Plaintiffs' claims are time barred. Defendant affirmatively states Plaintiffs' claims are barred by the applicable two-year statute of limitations set forth in section 16.003 of the Texas Civil Practices and Remedies Code. *See* Tex. Civ. Prac. & Rem. Code Ann. § 16.003(a) (Vernon 2014). Although Plaintiffs filed their petition on November 9, 2018 (fourteen days before the expiration date of the limitations period on November 23, 2018), Plaintiffs did [not] serve Defendant until July 29, 2020 – 628 days after filing suit. During that 20-month time period, Plaintiffs only attempted to serve Defendant between October and December of 2019, waiting over 10 months to begin attempts and then delaying another 7 months after their last attempt. This is not due diligence as a matter of law. Thus, Plaintiffs' negligence claims are time barred by the 2-year statue [sic] of limitations.

Had this detailed pleading been employed as a response to the requests for disclosure, it would have been more than adequate to identify the basis of Tkach's defense. We will not permanently bar Tkach from raising a meritorious defense simply because, though adequately pleaded, it was not *also* disclosed in discovery.

Even if Appellants' attack were properly targeted at the exclusion of Tkach's summary judgment evidence, Appellants would not prevail because there was no unfair surprise. Tkach's evidence consisted solely of Appellants' petition and a declaration

18

from Appellants' process server, both of which Appellants themselves had previously filed with the court. Moreover, Tkach gave Appellants notice of her intent to develop a limitations defense by pleading it in her amended answer and by moving for summary judgment on the issue of limitations, which was not a complicated issue. The case against unfair surprise is made when, as here, the evidence sought to be excluded is (1) derived from an opposing party's own case filings and (2) offered in support of an uncomplicated legal theory that was (3) already fully set out in the proponent's pleadings. *See Hsu v. Conterra Servs., LLC*, No. 01-20-00182-CV, 2021 WL 921672, at *4–5 (Tex. App.—Houston [1st Dist.] Mar. 11, 2021, no pet.) (mem. op.) (concluding that there was no unfair surprise because the underlying theory was stated in the party's pleadings and because "this is not a complicated suit"); *Snowhite Textile & Furnishings, Inc. v. Innvision Hosp., Inc.*, No. 05-18-01447-CV, 2020 WL 7332677, at *11–12 (Tex. App.—Dallas Dec. 14, 2020, no pet.) (mem. op.) (upholding the admission of undisclosed evidence because the evidence supported an already-pleaded theory and because the evidence derived from the opposing party's own discovery); *Tijerina v. Wysong*, No. 14-15-00188-CV, 2017 WL 506779, at *6 (Tex. App.—Houston [14th Dist.] Feb. 7, 2017, no pet.) (mem. op.) (collecting similar cases). Put differently, Appellants could hardly be surprised by their own court filings when those filings were used to establish basic propositions—such as when they filed suit—for purposes of a limitations defense that was already plainly stated in Tkach's amended answer and motion for summary judgment.

We therefore conclude that despite Tkach's failure to disclose her defense in discovery, the trial court did not abuse its discretion by denying Appellants' objections to the motion for summary judgment and by granting summary judgment on the basis of the limitations defense. We overrule Appellants' fifth issue.

## VI. CONCLUSION

We affirm the trial court's judgment.

/s/ Wade Birdwell

Wade Birdwell
Justice

Delivered: January 27, 2022